## UNITED STATES ET AL. *v.* NORTHERN PACIFIC RAILWAY CO. ET AL.

No. 470. Argued February 9, 10, 1933.—Decided March 13, 1933.

*Mr. Edward M. Reidy*, with whom *Solicitor General Thacher* and *Messrs. Daniel W. Knowlton* and *Elmer B. Collins* were on the brief, for the United States and the Interstate Commerce Commission, appellants.

*Mr. Karl Knox Gartner*, with whom *Mr. Elwin E. Hadlick* was on the brief, for the Northwestern Petroleum Association et al., appellants.

*Mr. M. L. Countryman, Jr.*, with whom *Messrs. D. F. Lyons, F. G. Dorety, P. F. Gault, A. H. Lossow, R. J. Hagman*, and *J. P. Plunkett* were on the brief, for appellees.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

This appeal brings here for review a decree of a district court of three judges, 60 F. (2d) 302, setting aside and enjoining the enforcement of an order of the Interstate Commerce Commission establishing rates on petroleum from the midcontinent field to destinations in western Minnesota and North Dakota.

492

The appellees' petition charged that the Commission exceeded its powers, denied a fair hearing, and abused its discretion in refusing to reopen the case and to receive proof of changes in economic conditions arising after the closing of the evidence. The District Court held against the appellees as respects the first two charges, but found that the third was sustained and therefore set aside the order. This the appellants say was error. The appellees, however, assert that the allegations and proofs as to changed conditions support the decree; and urge, in the alternative, that if this position be untenable, the action of the court was required for the other reasons recited in the petition.

The complaint, filed July 15, 1925, alleged the existing rates were unreasonable. A hearing was held in October, 1925, and a report and order entered March 5, 1928, fixing rates effective June 14, 1928. A rehearing was granted June 10, 1929, the case was reheard, and the record closed on January 15, 1930. A petition of the carriers that the case be reopened and consolidated with certain others was denied April 14, 1930. The final report and order were entered December 1, 1931, prescribing rates to become effective March 15, 1932. On February 3, 1932, the appellees presented a petition praying that the Commission vacate the order or postpone its effective date, grant a rehearing, and reopen the case for the admission of further evidence to show a change in economic conditions since the record had been closed. This was dismissed, and the present suit was then instituted.

The appellees urge that the decision in *Atchison, Topeka & Santa Fe Ry. Co.* v. *United States*, 284 U. S. 248, requires us to hold that the Commission's refusal to reopen the proceeding was an abuse of discretion. That case, however, exhibited a substantially different state of facts. There the Commission conducted an investigation, pursuant to the Hoch-Smith Resolution, touching the

entire structure of rates on export grain from the territory west of the Mississippi River and from Illinois. Here the inquiry embraced rates from origin points to a relatively small destination area. The diminution of carrier revenue consequent upon the new rates, while substantial, is far less than that effected by the order in the *Santa Fe* proceeding. In that case the record was closed in September, 1928, the matter submitted on argument July 1, 1929, and a report and order entered July 1, 1930, establishing rates to be charged on and after October 1, 1930. The effective date was postponed from time to time on account of the difficulty of adjusting the tariffs in accordance with the order. In September, 1930, the carriers requested a rehearing. Prior to action thereon the railroads brought to the Commission's attention their changed financial condition due to the economic depression. In November, 1930, a rehearing was denied. On February 18, 1931, a second petition for rehearing was presented, which was in effect a bill of review. It averred that due to the nation-wide depression which had its inception in November, 1929, the facts exhibited by the record as closed in September, 1928, were utterly unrepresentative of conditions existing at the effective date of the order some two and one-half years later.

In the proceedings under review the record was closed January 15, 1930. The economic depression, then begun, grew in intensity throughout that and the following year. During the pendency of the case appellees filed several petitions for rehearing, that of May 4, 1928 reciting that the carriers were unable under existing rates to earn the fair return contemplated by § 15a of the Act. Between January 15, 1930 and February 3, 1932 no application based on changed economic conditions was made to the Commission, and that body was allowed to consider the record and prepare a report without notice of any claim in that behalf.

The Commission is not bound to allow existing unreasonable rates to stand solely because revision will in some degree adversely affect carriers suffering from economic depression. The decision in the *Santa Fe* case is not to be extended to require a rehearing in every rate case for changed economic conditions, however insignificant the effect of the order on carrier revenue. The rule announced, while intended to safeguard substantial rights of the railroads, may not be invoked where its application would disenable the Commission to protect the interest of the public.

Though the order substantially reduced the carriers' revenues, we do not consider the merits of the application for rehearing, as we think the carriers' lack of diligence in bringing this matter to the Commission's attention deprived them of any equity to complain of the refusal of their petition. They sat silent and took the chance of a favorable decision on the record as made. They should not be permitted to reopen the case for the introduction of evidence long available and susceptible of production months before the Commission acted. The denial of a rehearing, in view of this delay, was not such an abuse of discretion as would warrant setting aside the order.

This conclusion requires the reversal of the decree, unless, as the appellees contend, it may be sustained upon the other grounds presented to the District Court. We turn then to these aspects of the controversy.

The complaint attacked the existing rates as unreasonable, and did not charge undue preference or prejudice; but, it is said, the Commission based its order solely upon prejudice due to the relation of these rates with others in force in adjacent territory. The argument is that the relief granted was different from that invoked and so beyond the Commission's power. The appellees also claim that when they discovered that the Commission

was proceeding upon the basis of relationship, rather than reasonableness, they vainly sought an opportunity to show that the rates used as comparatives were unreasonably low, and therefore of no probative value. The Commission's dismissal of certain petitions for further hearing upon consolidated records, presently to be described, is represented as a denial of a fair hearing, in that the carriers were prevented from showing the impropriety of the comparisons used. The examination of these contentions requires a detailed statement with respect to this and other proceedings before the Commission. .

Prior to the filing of the complaint in this case (No. 17304) the Commission was engaged in an investigation (No. 15584) of rates on petroleum from midcontinent territory to western trunk line destinations and Indiana, Illinois, and northern Michigan. Midcontinent origins had been grouped for rate making purposes, and the principal contention in No. 15584 was that the rates from the different blanket origins were not properly related. In that proceeding, however, intervenors residing in North and South Dakota alleged that the rates from the midcontinent field as a whole to destinations in those states were unreasonably high and prejudicial when compared with the tariffs in force to other territory. Certain related complaints were consolidated with No. 15584 and all were heard on a single record. While the investigation was under way the complaint in the present case, No. 17304, was filed by North Dakota and western Minnesota complainants, and was heard on a separate record. There had also been filed a complaint known as No. 16309, by South Dakota consignees, attacking the rates to that territory as unreasonable and also as unduly prejudicial in their relation to rates to Iowa and southern Minnesota. In May, 1926, a report was filed in No. 15584 (112 I. C. C. 421) readjusting the rates from various origin blankets in

the midcontinent field to western trunk line destinations and declaring the new rates to be just, reasonable and non-preferential. Referring to the interventions of consignees in North and South Dakota and to case No. 16309, affecting South Dakota, the Commission stated that the record was not adequate for a finding with respect to the rates to those destinations, and announced that No. 15584 would be held open for further consideration in connection with No. 16309. It subsequently consolidated No. 16309 and the present case, No. 17304, with No. 15584, and on March 5, 1928, filed a supplemental report establishing rates to the territory here in question, effective June 14, 1928, adjudging them reasonable and properly related to the rates to western trunk line territory theretofore prescribed (139 I. C. C. 605).

May 4, 1928 the appellees asked the Commission to postpone the effective date of this order, and to vacate its outstanding orders " in No. 15584 and associated cases, in so far as said orders related to rates to Lincoln and Omaha, Nebraska, Sioux City, Fort Dodge, and Mason City, Iowa, Duluth and St. Paul, Minnesota, and Sioux Falls, South Dakota, and to grant them a further hearing upon a single record with respect to the level of the rates from the midcontinent field to destinations in Nebraska, Iowa, South Dakota, North Dakota, and Minnesota." It will be observed the rehearing requested would affect all rates established in No. 15584 and related cases in the original and supplemental reports. The petition was denied February 11, 1929.

The required schedules having been put into effect, the carriers filed tariffs reducing the rates on petroleum from origins in Wyoming to points in North Dakota, South Dakota, and certain cities in Iowa, Nebraska and Montana—this upon the theory that these should be reduced to bring them into proper relationship with the new charges on petroleum from the midcontinent field. After

hearing the Commission suspended the rates so promulgated (153 I. C. C. 363).

In November, 1928, Dacotah Oil Company, et al. filed a complaint, No. 21737, alleging that the rates fixed by the order of March 5, 1928, to certain North Dakota points, were unjust and unreasonable, and praying the establishment of just and reasonable rates for the future. This was heard in March, 1929, and the record then closed. April 19, 1929, the complainants in this cause, No. 17304, filed a petition alleging that the rates prescribed March 5, 1928, were unjustifiably high as compared with those to the Minnesota gateways adjoining the destination territory in western Minnesota and North Dakota. On June 10, 1929, the Commission reopened the case. Three months later the Standard Oil Company of Indiana, operating refineries at Casper, Wyoming, filed its complaint alleging that rates on petroleum from Casper to North Dakota, South Dakota, Iowa and Minnesota were unreasonable and unduly prejudicial to the complainant, and unduly preferential of producers in the midcontinent field. This complaint was docketed as No. 22714. At about the same time the Public Service Commission of Wyoming filed a similar complaint (No. 22733) with respect to rates from Wyoming origins to the same destinations. The Commission thereupon assigned the present case, No. 17304, for further hearing on January 13, 1930. Just prior to that date the appellees petitioned the Commission asking that this complaint and the two just mentioned, concerning rates from Wyoming, should be consolidated for hearing and decision upon a common record, alleging that if any change were made in No. 17304 in the rates prescribed by the Commission March 5, 1928, from the midcontinent field, such readjustment would directly and necessarily disturb the relationship between midcontinent and Wyoming rates, which relationship was brought into issue by the complaints in No. 22714 and 22733.

On January 14, 1930, the appellees filed with the Commission a petition in No. 15584 and associated cases, requesting that they be reopened for further hearing with respect to rates therein prescribed from the midcontinent field to the key or gateway points such as Lincoln and Omaha, Nebraska; Des Moines, Fort Dodge, Sioux City, and Mason City, Iowa; Sioux Falls, South Dakota; and St. Paul and Duluth, Minnesota, and to the territory beyond such gateway points, and that the above-mentioned cases be consolidated with the two complaints respecting rates from Wyoming; this on the ground that the whole structure of rates ought not to be dealt with and adjusted piecemeal, since to do so would inevitably result in unnecessary dissipation of carrier revenue and create inconsistencies and dissatisfaction; and that the only way in which the complaints of discrimination, preference and prejudice in the rate structure could be satisfied would be by proceeding upon one record, with all interested parties before it, to work out a harmonious, consistent and otherwise lawful adjustment which would protect rather than unnecessarily sacrifice the revenues of the carriers. April 14, 1930, the petition was denied.

On December 1, 1931, the Commission made and filed its report and order in this cause and No. 21737, whereby the rates established by the order of March 5, 1928 were revised (179 I. C. C. 435).

The petition in the District Court sets forth the matters above outlined and summarizes the action of the Commission in the various proceedings. The answers of the United States and the Commission admit the filing of the several complaints and the making of the reports and orders thereon; deny that the description of the Commission's action set out in the petition is accurate or complete; and refer to the reports and orders for a correct statement of what the Commission did. At the

trial none of the records in any of the complaints was put in evidence. The several petitions for rehearing and for consolidation are recounted and summarized in the petition, but are not set forth, nor included in the record. In considering the questions presented we are thus confined to the Commission's reports supplemented by the averments of the pleadings as to the substance of the applications for reopening, consolidation and rehearing.

It should be noted that appellees were parties respondent in each of the proceedings above-mentioned. In some the rates under attack in the present cause, No. 17304, were alleged to be unreasonable under § 1 of the Act, and also unduly prejudicial within the intent of § 3, and the carriers had full opportunity to be heard on both issues. In No. 15584, the *Midcontinent* case, the Commission expressly held open the question of the rates to North Dakota and western Minnesota for further consideration in connection with No. 16309, which charged that existing rates to South Dakota were unreasonable and unduly prejudicial as compared with the rates fixed in the *Midcontinent* case to the gateways and to western trunk line territory. In the supplemental report in the latter the Commission dealt with the South Dakota rates and those here involved. In the order of March 5, 1928, and in the final order of December 1, 1931, the Commission found that the rates prescribed were just and reasonable, and were properly related to those established in No. 15584. Note was taken of the fact that the rates to certain of the gateways were unduly depressed, and it was said that those established to South Dakota points, than which the rates prescribed herein are higher, had for that reason been raised above the depressed level of rates to the gateways.

In the absence of the evidence before the Commission we cannot say that there was no adequate and sufficient

proof on which to base a finding of the reasonableness of the rates prescribed.* It is true that in both reports touching the rates here in controversy the Commission used as comparatives rates from the midcontinent field to South Dakota points and those from Wyoming origins to South Dakota and North Dakota destinations. But it appears from the reports that the carriers themselves presented comparisons of these very rates in support of their contentions. Thus both the appellees and the Commission recognized what has long been settled—that existing rates for similar service to other destinations may be used for comparison as one test, though not a controlling one, upon the question of the reasonableness of the rates in issue. The Commission's reports do not sustain the averments of the petition that the question of reasonableness was disregarded and the order based solely upon a comparison with rates which were unduly and unreasonably low.

But the appellees say that if the Commission intended to give weight to the relationship of the rates established in No. 16309, to South Dakota, it should, in fairness, have permitted that case to be reopened and should have afforded opportunity for proof that the South Dakota rates were fixed in relation to the western trunk line tariff, which was unreasonably low due to competitive conditions. The record in the District Court fails to support this argument. As above noted, the carriers had been parties to the record in No. 16309, and confessedly the

---

* The principal reliance of the appellees is a statement by a dissenting Commissioner that "the adjustment here required is based very largely upon our previous findings in the Midcontinent Cases, which we have repeatedly stated required rates below reasonable maxima." The Commission's report is at variance with the stated conclusion, and in the absence of the record on which the report and order were based, we cannot infer that, in the determination of reasonableness, undue weight was given to relationship.

rates there established for South Dakota destinations were made relatively higher than those to trunk line territory. Moreover the petition of January 14, 1930 did not specifically request the Commission to reopen No. 16309 for the purposes of proof as to the South Dakota rates.

The appellees now insist that what they desired was an opportunity to show that the South Dakota tariffs were worthless as a guide to the proper charges to North Dakota destinations. But their petition disclosed no such purpose. It requested the reopening of the records " in No. 15584 and associated cases, including the Wyoming complaints." The granting of a rehearing upon this petition might have involved the retrial of all the midcontinent cases and the Commission was warranted in understanding that this was the scope of the application. The relief asked was much broader than was necessary to the purpose appellees now avow, and we think they cannot successfully challenge the Commission's refusal to consider all midcontinent petroleum rates established after full hearings to which the carriers had been parties. We are not referred to any request for the reopening of the South Dakota complaint, No. 16309, which appellees say was the specific proceeding they desired consolidated with this case, No. 17304.

It is further asserted that the failure to consolidate the present proceeding with the two complaints as to rates from Wyoming to North Dakota points deprived the appellees of a fair hearing because the scale of rates from the midcontinent field ought to bear a just relation to those from Wyoming origins. The answer to this contention is found in the Commission's reports. All of the parties complainant and defendant in this case and in No. 15584 introduced evidence as to the existing rates from Wyoming origins and compared them with those from the midcontinent field to North and South Dakota and western Minnesota, the complainants in order to sustain their

502

position 'that the latter were unreasonable, the respondents to support the view that they bore a proper relation to the Wyoming rates and ought not to be reduced. It cannot therefore be said that by the refusal to consolidate the Wyoming complaints with the present proceeding the carriers were denied a fair hearing on the question of relationship between the two rate structures.

The District Court was right in holding that the appellees did not make out the claims that the Commission exceeded its statutory authority or denied a fair hearing. But as we think the District Court erred in holding that the Commission improperly refused the petition of February 3, 1932, for a rehearing based upon changed conditions, the judgment must be

*Reversed.*