4 F.Supp. 745 (1933)
MISSISSIPPI VALLEY BARGE LINE CO.
v.
UNITED STATES et al. (ILLINOIS CENT. R. CO. et al., Interveners).
No. 10496.
District Court, E. D. Missouri, E. D.
October 13, 1933.
James R. Van Slyke, Samuel A. Mitchell, and H. L. Harvey, all of St. Louis, Mo. (Thompson, Mitchell, Thompson & Young, of St. Louis, Mo., on the brief), for petitioner.
Elmer B. Collins, Sp. Asst. to Atty. Gen. (Harold M. Stephens, Asst. Atty. Gen., and Louis H. Breuer, U. S. Atty., of Rolla, Mo., on the brief), for the United States.
H. L. Underwood, of Washington, D. C. (Daniel W. Knowlton, of Washington, D. C., on the brief), for Interstate Commerce Commission.
Horace L. Walker, of Washington, D. C., and Elmer A. Smith, of Chicago, Ill., for interveners.
SANBORN, Circuit Judge, and FARIS and DAVIS, District Judges.
While the application of the petitioner was for a preliminary injunction, it was agreed by all parties that the suit should be finally determined by the court upon the record made at the hearing.
The suit is brought by the petitioner against the United States and the Interstate Commerce Commission to enjoin orders of the Commission issued on July 3, 1933, and amended July 18, 1933, in a proceeding entitled "Investigation & Suspension Docket No. 3814, Sugar from Gulf and South Atlantic *746 Points, Sugar Cases of 1933." 194 I. C. C. ___.
The facts out of which this controversy arises are, in substance, these:
The petitioner operates as a common carrier by water between New Orleans, La., and northern points on the Mississippi and Ohio rivers, including St. Louis and Cincinnati. It has a certificate of convenience and necessity from the Interstate Commerce Commission, and it has joined with rail carriers in establishing through routes and joint rates. Its port to port rates are, of course, not subject to regulation by the Commission.
Due to the difference in rates charged by the petitioner and other barge lines and those formerly charged by the competing rail carriers, the business of transporting refined sugar from points adjacent to the lower Mississippi river was diverted from the rail carriers. In order to recover this business the competing rail carriers jointly proposed new schedules of reduced rates on sugar from New Orleans to northern points, and, in accordance with section 6 of the Interstate Commerce Act (49 USCA § 6), filed with the Commission schedules of such rates to become effective October 1, 1932. These schedules established two different sets of rates, one based upon a minimum weight of 60,000 pounds per car, and the other based upon a minimum weight of 80,000 pounds per car. To illustrate the effect of the proposed change, the old rate to Chicago from New Orleans was 56 cents a hundred pounds, and under the proposed new rates the charge was 39 cents a hundred pounds on the lesser minimum per car, and 30 cents a hundred pounds on the greater.
The Interstate Commerce Commission, under section 15 (7) of the Interstate Commerce Act (49 USCA § 15 (7)), suspended these rates pending investigation. Protests against the proposed rates were filed by the petitioner and others. After a full hearing and investigation the Commission issued its orders of July 3, 1933, and its amended orders of July 18, 1933. Thereby the Commission approved the proposed rates in so far as they were based upon the 60,000 pound minimum, but did not approve the rates based upon the 80,000 pound minimum, which it found were lower than the necessities of the situation required, and ordered a cancellation of the schedules to that extent. It observed, however, that the circumstances justified a rate on the 80,000 pound minimum four cents higher than that proposed by the railroads, and the railroads were invited to publish and to make effective such rates. Thereupon the railroads did publish and file changed schedules in accordance with the suggestion of the Commission, and such rates became effective.
The petitioner filed with the Commission a motion for a rehearing upon the grounds of changed economic conditions and the alleged failure of the Commission to give effect to the congressional mandate of section 500 of the Transportation Act of 1920 (U. S. C., title 49, § 142 [49 USCA § 142]), which is directed toward the encouragement of water transportation. This motion was denied. This suit to enjoin the enforcement of the orders in so far as they affect rates from New Orleans followed. It is brought under U. S. C., title 28, § 41 (28), 28 USCA § 41 (28), and is directed against the Commission and the United States in accordance with the provisions of U. S. C., title 28, § 46, 28 USCA § 46.
The petitioner complains of the Commission's orders for the following reasons:
(1) The Commission ignored the policy of Congress as stated in the Transportation Act.
(2) Its decision is unsupported by the evidence and by its findings.
(3) The Commission by its orders has permitted a combination in restraint of trade, which is contrary to the spirit of the antitrust laws.
(4) The proposed rates will result in irreparable injury and damage to the petitioner.
(5) The orders are arbitrary, discriminatory, and unduly preferential in violation of sections 2 and 3 of the Interstate Commerce Act (U. S. C., title 49, §§ 2, 3 [49 USCA §§ 2, 3]).
(6) The denial by the Commission of the petitioner's application for a rehearing amounted to a denial of a fair hearing.
The United States has moved to dismiss the petition on the ground that the petitioner has no standing in court because it lacks a sufficient interest in the subject-matter of the suit; that the Commission's orders are negative in form and substance and are not such orders as can be enjoined; that the petitioner's bill is without equity and discloses no grounds which entitle the petitioner to an injunction.
The Interstate Commerce Commission asserts that its findings were fully supported by the evidence submitted to it, that it acted contrary to no law or mandate of Congress, *747 and that the petitioner has no such interest in the rates established or permitted by the orders as to enable him to maintain this suit.
The questions presented, then, are substantially these:
1. Has the petitioner such an interest in the subject-matter of the suit as entitles him to maintain it?
2. Are the orders of the Commission such as may be enjoined?
3. Do the orders of the Commission sanction a violation of the anti-trust laws, and are they for that reason void?
4. In view of the findings of the Commission and of the Congressional policy announced by the Transportation Act, are the orders complained of arbitrary and unduly discriminatory?
5. Was the petitioner denied a fair hearing?
In view of the conclusions which we have reached as to the third, fourth, and fifth questions, we feel that it is unnecessary to decide whether the petitioner has a right to maintain this suit and whether the orders of the Commission are such as may properly be enjoined. The answer to the third question is obvious. Only the United States can sue to enjoin, for an alleged violation of the anti-trust laws, a combination of common carriers subject to the provisions of the Interstate Commerce Act with respect to a matter within the jurisdiction of the Interstate Commerce Commission. U. S. C., title 15, § 26 (15 USCA § 26); Central Transfer Co. v. Terminal R. Ass'n of St. Louis (C. C. A. 8) 61 F.(2d) 546, 550, affirmed, 288 U. S. 469, 473, 53 S. Ct. 444, 77 L. Ed. 899.
The record of the proceedings before the Commission has not been presented to this court, and the affidavits which have been received afford only an imperfect and incomplete picture of the situation. In view of the absence of the record of the evidence which the Commission had before it, we must accept its findings as conclusive.
"* * * Obviously we hardly could sustain a decision rejecting the reparation order upon the ground that there was not sufficient evidence before the commission to support it when the whole of the evidence that was before the commission was not produced." Spiller v. A., T. & S. F. Ry. Co., 253 U. S. 117, 125, 40 S. Ct. 466, 470, 64 L. Ed. 810. See, also, Louisiana & P. B. Ry. Co. v. United States, 257 U. S. 114, 116, 42 S. Ct. 25, 66 L. Ed. 156; Nashville, C. & S. L. Ry. Co. v. State of Tennessee, 262 U. S. 318, 324, 43 S. Ct. 583, 67 L. Ed. 999; Edward Hines Yellow Pine Trustees v. United States, 263 U. S. 143, 148, 44 S. Ct. 72, 68 L. Ed. 216; Chicago, I. & L. Ry. Co. v. United States, 270 U. S. 287, 295, 46 S. Ct. 226, 70 L. Ed. 590; Department of Public Works of Washington v. United States (D. C.) 55 F.(2d) 392, 395.
We do not understand that the petitioner denies the conclusiveness of the findings of the Commission in the absence of the record, but its contention is that this court should hold that the orders of the Commission are upon their face not supported by the Commission's findings and are contrary to such findings and to an established policy of Congress. This policy is enunciated in section 500 of the Transportation Act of 1920 (U. S. C., title 49, § 142 [49 USCA § 142]), which reads: "It is declared to be the policy of Congress to promote, encourage, and develop water transportation, service, and facilities in connection with the commerce of the United States, and to foster and preserve in full vigor both rail and water transportation. * * *"
The Commission found that the interveners were handling practically no long hauls of sugar from the South to the northern distributing points, their sugar traffic consisting only of occasional special or emergency shipments; that the diversion of the sugar traffic to the barge lines in 1932 cost the principal intervener, the Illinois Central Railroad Company, probably half a million dollars in revenue; that sugar constitutes about one-third of the total tonnage of the petitioner and yields over 40 per cent. of its total revenue; that the rates proposed by the rail carriers were more than high enough to pay the costs of the service rendered; and that many commodities were handled by these roads at lower rates than those proposed for sugar.
It appears that the Federal Barge Line, another carrier by water operating in the same territory and which is also largely dependent upon the sugar traffic for its revenues, does not protest the proposed rates, preferring to let the competing railroads set the rate level. There is no evidence before us which would justify a finding that the petitioner cannot, under favorable conditions, carry sugar at as low a rate as its rail competitors. It is probably not important whether it can or cannot.
The petitioner's claim of arbitrariness is mainly a general one. It does, however, contend that there is great diversity in rates from the Atlantic seaboard and those from *748 the Gulf to the same interior points; that the Commission did not state the particular method of computation by which it arrived at the rate levels it approved, and must have taken a mathematical mean of the costs testified to by witnesses for both sides and then applied a certain differential; and that, while the per ton per mile earnings of the roads from this sugar traffic under the new rates would compare favorably with the system earnings of the Illinois Central Railroad, this is an unfair basis of comparison, because the costs of the Illinois Central System are the lowest of any of the roads concerned.
It seems evident to us that the question of the propriety of putting into effect the proposed rates, their reasonableness, and their effect upon shippers and competitors was one peculiarly for the Commission and one into which the courts should not inject themselves unless it clearly appears that the orders of the Commission were arbitrary, and that it exceeded its powers in making them. The Commission considered all factors entering into the problem and at least attempted to reach a result which was fair to all parties concerned. The Commission's report indicates a careful analysis of the entire situation. Neither the rates proposed by the railroads nor those suggested by the petitioner were adopted in full. The conclusion of the Commission that the rate levels which it approved and suggested were reasonable and lawful appears to have been supported by the record before it. Assuming, as we must, that these rates are ample to cover the costs of service, we think it is impossible for this court to say that the orders which the Commission made were arbitrary.
The only question which then remains is whether such orders are in contravention of the policy of Congress enunciated in section 500 of the Transportation Act hereinbefore quoted. The language of that section is nothing more than a general statement of policy. There is no guaranty contained in it of immunity from competition, nothing to indicate an intention on the part of Congress that a common carrier by water was to be given a preference in the matter of rates over a common carrier by rail, and nothing to indicate that a shipper was to be required to pay for the transportation of a commodity, where rail and water lines were in competition, a rate high enough to enable each carrier to operate at a profit.
Reduced to its lowest terms, the petitioner's contention virtually is that an order of the Interstate Commerce Commission which permits a railroad to reduce its rates to a point which will prevent a barge line from profitably competing with it is arbitrary, discriminatory, and void. We cannot agree. If the rates fixed or permitted by the orders would be reasonable in the absence of barge competition, we think they are no less reasonable because of such competition.
The petitioner's contention with respect to the denial of its motion for a rehearing on the ground of changed economic conditions is sufficiently answered by the language of the Supreme Court in United States v. Northern Pacific Railway Company, 288 U. S. 490, 494, 53 S. Ct. 406, 407, 77 L. Ed. 914: "The decision in the Santa Fe Case [284 U. S. 248, 52 S. Ct. 146, 76 L. Ed. 273] is not to be extended to require a rehearing in every rate case for changed economic conditions, however insignificant the effect of the order on carrier revenue. The rule announced, while intended to safeguard substantial rights of the railroads, may not be invoked where its application would disenable the Commission to protect the interest of the public."
Finding the facts and the law to be as we have stated, we reach the conclusion that the defendants and interveners are entitled to a decree dismissing the bill of complaint. They may, upon reasonable notice to the petitioner, present to this court proposed findings of fact, declarations of law, and a decree, in accordance with the views expressed in this decision.