**HUGHES TRANSP., Inc. v. UNITED STATES.**

Civ. No. 3845.

United States District Court, E. D. South Carolina.

Argued Oct. 2, 1953.

Decided Oct. 13, 1953.

Daryal A. Myse, Washington, D. C., and Frank H. Bailey, Charleston, S. C., for plaintiff.

James E. Kilday and John H. D. Wigger, Special Assts. to the Atty. Gen., Stanley N. Barnes, Asst. Atty. Gen., and Ben Scott Whaley, U. S. Atty., Charleston, S. C., for defendant.

Edward M. Reidy, Chief Counsel, and Allen Crenshaw, Associate Chief Counsel, Washington, D. C., for Interstate Commerce Commission.

Before PARKER, Circuit Judge, and TIMMERMAN and WILLIAMS, District Judges.

PER CURIAM.

This is an action to set aside an order of the Interstate Commerce Commission denying plaintiff, Hughes Transportation, Inc. of Charleston, South Car-

olina, a certificate of public convenience and necessity to transport explosives and ammunition by motor vehicle between various points in the Southeastern states. A court of three judges has been constituted as required by· statute and the case has been submitted on the record made before the Commission.

The facts are that the plaintiff, which had been granted temporary authority to transport explosives in the territory here involved, applied to the Commission on December 29, 1945, for permanent authority to continue the same operations. While this application was pending, the Commission refused renewal of the temporary authority. Subsequently the Commission's trial examiner, after conducting a hearing, filed a report on May 15, 1946 in which he recommended the issuance of the permanent authority substantially as applied for, finding plaintiff fit, willing and able to perform the proposed service and that same was required by public convenience and necessity. By order of July 22, 1946 the Commission ordered the proceedings reopened for further hearing solely on the issue of plaintiff's fitness, willingness and ability and, after a hearing, entered an order on December 18, 1946 finding that issue against plaintiff and denying the application on that ground, without passing on the issue of public convenience and necessity. On June 7, 1947 the Commission considered and denied a petition for reconsideration and further hearing. Other petitions for rehearing were filed in the years 1949, 1952 and 1953 by plaintiff and were denied without consideration because not filed in time, the Commission· pointing out in its orders of denial that a new petition would be more appropriate than petitions for rehearing or further hearing.

The order of the Commission was based on accidents in which plaintiff's motor vehicles had been involved, on failure of plaintiff to report many of these accidents as required by the rules of ·the Commission, and on failure of plaintiff to comply with other rules and regulations of the Commission including the rules relating to the hours of service of drivers. The facts with respect to these matters are fully set forth in the report of the Commission and need not be repeated here. Plaintiff admits that the evidence supports the Commission's findings with regard thereto, but contends that the Commission found also that these violations had been due to war time conditions which had been corrected prior to the entry of the order and that because of such correction the finding on the issue of fitness was not justified. With respect to this matter the Commission said in its report:

"In mitigation of certain of its violations of our regulations, applicant stresses the war emergency conditions under which it transported shipments for the Army and Navy, most of which required expedition. It concedes that some violations resulted from the exercise of poor judgment on the part of certain of its drivers and from lax management. It urges, however, that as a result of its change in management and the other corrective measures taken, it is now in a position to comply fully with all of our rules and regulations and is willing so to do.

"The question is whether applicant, because of repeated violations of our regulations and the numerous accidents in which its vehicles have been involved, has shown itself to be unfit to conduct the proposed operations, or unwilling to conform with the requirements of the act and of our rules and regulations thereunder. Motor carriers of dangerous explosives owe a special duty to the public, and must be taken to have assumed a higher degree of responsibility than carriers of general commodities, to the end that ample protection will be afforded the public. To this end also, special rules and regulations have been prescribed for observance by such carriers, in addition to those regulations compliance with which is re-

quired by all carriers of freight. We, too, like applicant, are charged with a special duty in respect of the transportation of such commodities. Such duty includes not only the prescription of the special rules and regulations mentioned, but also their enforcement. We would be grossly derelict in the discharge of that duty if, in our consideration of applications seeking the issuance of certificates to carriers authorizing new operations involving the transportation of dangerous explosives, we closed our eyes to repeated past violations, or failed to give heed to a startling accident record on the part of any particular carrier. * *

"Aside from violations of our regulations, which have resulted in accidents, numerous other violations have occurred which readily might have had similar disastrous consequences. Applicant's officials have been notified of such violations from time to time as they were detected, and while corrective action was ultimately taken in each instance, except as heretofore noted, violations continued to occur in inexcusable number, considering the hazards involved, and this despite the promises of applicant's officials, including its president and present general manager, that steps would be taken to bring the operations in compliance with our regulations, and to avoid future violations. Illustrative, is applicant's failure on at least two occasions to have on file doctors' certificates of physical examination for a number of its drivers; and the driving of vehicles with knowledge that the hand brakes were faulty. Moreover, these violations have persisted even after the change in management.

"Although applicant has taken certain corrective measures which its officials believe will now insure full compliance with our rules and regulations and although it has, as in the past also, expressed a willingness to conform therewith in the future, in the light of its repeated failures actually to comply in the past, despite promises so to do, little significance can be attached to its expressed intentions as regards the future. We conclude that we have no real alternative but to find that applicant has failed to show that it is fit to conduct the proposed operation, or that it is able and willing to conform to the requirements of the act and of our rules and regulations thereunder."

We cannot say that the Commission's findings are not supported by substantial evidence or that its conclusions based on its experience with plaintiff are arbitrary or unreasonable, merely because of plaintiff's efforts to correct abuses and its promise to abide by regulations in the future. Experience is generally a safer guide than promise or prophecy. Plaintiff says that account should be taken of the fact that upon later applications it was found by the Commission to be fit, willing and able to handle explosives; but these findings were made by the Commission in the light of further experience and have no tendency to show that the findings of December 18, 1946 were arbitrary and unreasonable or not supported by the record when made. "The Commission is the guardian of the public interest in determining whether certificates of convenience and necessity shall be granted. For the performance of that function the Commission has been entrusted with a wide range of discretionary authority." United States v. Detroit & Cleveland Navigation Co., 326 U.S. 236, 241, 66 S. Ct. 75, 77, 90 L.Ed. 38; Interstate Commerce Commission v. Parker, 326 U.S. 60, 65 S.Ct. 1490, 89 L.Ed. 2051; Rochester Tel. Corp. v. United States, 307 U.S. 125, 139–140, 59 S.Ct. 754, 83 L.Ed. 1147.

With respect to the petitions for rehearing or reconsideration, it is well settled that whether these should

be granted or not was a matter resting in the sound discretion of the Commission. United States v. Northern Pac. R. Co., 288 U.S. 490, 494, 53 S.Ct. 406, 77 L. Ed. 914; Interstate Commerce Comm. v. Jersey City, 322 U.S. 503, 515, 64 S. Ct. 1129, 88 L.Ed. 1420; United States v. Pierce Auto Lines, 327 U.S. 515, 534–535, 66 S.Ct. 687, 90 L.Ed. 821. There is nothing here to show that the discretion was abused, particularly since as the Commission pointed out plaintiff may obtain any relief to which it may be entitled by filing a new application for a certificate of convenience and necessity. Such certificate must speak of course as of the date on which it is issued, whether granted in a new proceeding or in the one pending. Plaintiff thinks that it would benefit by the recommendation of the trial examiner made in its favor if a rehearing were granted herein, and that it would have the benefit of the testimony taken in 1946; but it is clear that a recommendation made as to public convenience and necessity in 1946 could be accorded but little weight in a hearing held seven years later and, so far as the evidence on the former hearing is concerned, this could and should and doubtless would be admitted in the hearing on a new petition in so far as it had any probative value on the issues there involved.

We do not pass upon the question of plaintiff's laches, since it is not raised by the defendants. We do not think, however, that it was ever contemplated that a party claiming to be aggrieved by an order of the Commission could wait more than six years and until the record in the case had been delivered over to the government archivist before asking the courts for review. If there is no statute limiting the time within which review may be asked, there would seem to be no reason why the courts should not apply the doctrine of laches to preclude the filing of a petition for review after so great a lapse of time.

For the reasons stated, the complaint will be dismissed.

Complaint dismissed.