**DEPARTMENT OF PUBLIC SERVICE REGULATION, PUBLIC SERVICE COMMISSION, STATE OF MONTANA, Plaintiff,**

and

**Frank W. Hazelbaker et al., Intervening Plaintiffs,**

v.

**The UNITED STATES of America and The Interstate Commerce Commission, Defendants,**

and

**Burlington Northern, Inc., Intervening Defendant.**

**No. 2084.**

United States District Court, D. Montana, Butte Division.

July 5, 1972.

David L. Astle, Atty., Dept. of Public Service Regulation, Helena, Mont., John C. Sheehy, of Hutton, Schiltz & Sheehy, Billings, Mont., for intervening plaintiffs.

Richard H. Streeter, Gen. Counsel, ICC, Washington, D. C., Harold G. Dean, of Corette, Smith & Dean, Butte, Mont., for intervening defendants.

Reginald Ames, St. Paul, Minn., for Burlington Northern.

## OPINION AND ORDER

Before BROWNING, Circuit Judge and MURRAY and EAST, District Judges.

### PER CURIAM:

On December 1, 1971, the Public Service Commission, State of Montana, instituted this action to annul, set aside and enjoin an order of the Interstate Commerce Commission permitting abandonment by Burlington Northern of its Red Bluff Branch in Montana. The action was commenced, pursuant to 28 U.S.C. § 2322, against the United States and the Interstate Commerce Commission. Burlington Northern Inc., was permitted to intervene as a defendant and Frank W. Hazelbaker, et al., were permitted to intervene as plaintiffs, both pursuant to 28 U.S.C. § 2323. This three-judge

court was convened as required by 28 U.S.C. § 2325 to hear the case.

The Red Bluff Branch originates at Sappington, Montana, a point on the Burlington Northern's east-west line, and extends south 10 miles to Harrison, Montana and then 11.3 miles south to Norris, Montana. The population of the area served by this branch, including a portion of the Madison Valley south of Ennis, Montana, is in excess of 921. The principal users of the branch line are grain and cattle shippers and a talc mine, located near Cameron, Montana, some 40 miles south of Norris.

The application for a certificate that public convenience and necessity permitted abandonment of the Red Bluff Branch was filed by the Northern Pacific Railway Company, a predecessor of Burlington Northern, on February 11, 1969. There were hearings before the Interstate Commerce Commission examiner at Ennis, Montana, on October 29th, 30th and 31st, 1969. The examiner recommended, by Report and Order dated March 27, 1970, that the application for authority to abandon be denied.

On February 2, 1970, the Supreme Court upheld a merger plan by the Northern Lines and their subsidiaries which had been under negotiation as early as 1955 and under consideration by the Interstate Commerce Commission since filing of formal application under 49 U.S.C. § 5 in 1961. For the history of this merger see Northern Lines Merger Cases [United States v. I. C. C.] 396 U.S. 491, 90 S.Ct. 708, 24 L.Ed.2d 700 (1970). Burlington Northern, a successor to Northern Pacific, filed exceptions to the examiner's Report and Order. The Commission, acting through Review Board No. 5, by Report and Order dated November 13, 1970, reversed the examiner and permitted abandonment. The Commission found that the line was at least marginally profitable as operated by the Northern Pacific Railway Company and that the merger, which created a greatly expanded railroad, would increase the revenue attributable to the Red Bluff Branch but drew no conclusions as to the size of this increase. The Commission also found that a capital expenditure of $353,400 would be required to operate the Branch and accepted the Northern Pacific's evidence that it would take at least 45 years to recover the cost of rehabilitation. Finding that there would be no increase in traffic within the near future the Commission ultimately concluded that the capital expenditure would not be justified on the basis of the profitability of the line and the minimal inconvenience to the shippers it served. For the reasons stated below we enjoin the enforcement, operation and execution of the Commission's certificate of abandonment.

██ The limited function of the reviewing court in this case is set out in United States v. Pierce Auto Freight Lines, 327 U.S. 515, 536, 66 S.Ct. 687, 698, 90 L.Ed. 821 (1945). "Unless in some specific respect there has been prejudicial departure from requirements of the law or abuse of the Commission's discretion, the reviewing court is without authority to intervene." *Pierce Auto* also discusses the requirement that the Administrative Review Board may act appropriately only on the record presented before it, but "the mere fact that the determining body has looked beyond the record proper does not invalidate its action unless substantial prejudice is shown to result." *Pierce Auto,* supra, page 530, 66 S.Ct. page 695.

The Supreme Court in the land mark case of Colorado v. United States, 271 U.S. 153, 168, 46 S.Ct. 452, 456, 70 L.Ed. 878 (1926) interpreted the statutory authority and set down the standard by which abandonment was to be allowed. Justice Brandeis held that:

"The sole test prescribed is that abandonment be consistent with public necessity and convenience. In determining whether it is, the Commission must have regard to the needs of both intrastate and interstate commerce. For it was a purpose of Transportation Act, 1920, to establish and maintain adequate service for both. . . .

(citations omitted). The benefit to one of the abandonment must be weighted against the inconvenience and loss to which the other will thereby be subjected. Conversely, the benefits to particular communities and commerce of continued operation must be weighted against the burden thereby imposed upon other commerce. . . . The result of this weighing— the judgment of the Commission—is expressed by its order granting or denying the certificate."

Since it can be conceded that it is a rare case that abandonment will not result in some inconvenience to the general public, this fact by necessity dictates that the Commission find that there is some burden on interstate commerce and that that burden outweighs the inconvenience to the public. The report of the Commission concludes that there is inconvenience to the public but determines that it is minimal. Even minimal inconvenience is some inconvenience which must be balanced against some burden on interstate commerce before abandonment can be allowed. Inasmuch as the Commission has determined that the line is marginally profitable the finding that there is a burden on interstate commerce, although not explicitly stated, must rest upon necessity of the $353,400 capital expenditure necessary to keep the branch in operation and the effect this would have in light of profits.

While the Supreme Court heard the *Northern Lines Merger Cases,* supra, on October 21, 1969, no evidence was received by the hearing examiner as to the effect of the merger on the branch line operation because the Burlington Northern did not come into existence until the following February 2, 1970. The plaintiffs have established that they have been prejudiced by this factor because evidence as to the effect of the merger may have significant effect upon the financial conclusions drawn by the Commission. The Commission in its order considered the effect of the merger upon the income of

the line and conceded the revenues of the branch would be increased, but it did so outside the record and therefore their action was prejudicial to plaintiffs and without substantial basis in the record.

Further, there is no showing that the capital expenditure would result in a burden upon interstate commerce if expended by Burlington Northern. Justice Brandeis discussed the effect of expenditures on the application for certificate of abandonment:

"The certificate issues, not primarily to protect the railroad, but to protect interstate commerce from undue burdens or discrimination. The Commission by its order removes an obstruction which would otherwise prevent the railroad from performing its federal duty. Prejudice to interstate commerce may be effected in many ways. One way is by excessive expenditures from the common fund in the local interest, thereby lessening the ability of the carrier properly to serve interstate commerce. Expenditures in the local interest may be so large as to compel the carrier to raise reasonable interstate rates, or to abstain from making an appropriate reduction of such rates, or to curtail interstate service, or to forego facilities needed in interstate commerce. Likewise, excessive local expenditures may so weaken the financial condition of the carrier as to raise the cost of securing capital required for providing transportation facilities used in the service, and thus compel an increase of rates. Such depletion of the common resources in the local interest may conceivably be effected by continued operation of an intrastate branch in intrastate commerce at a large loss." Colorado v. United States, supra, pp. 162–163, 46 S.Ct. p. 454.

The making of capital expenditure is not automatically a burden on interstate commerce and without a showing that such is the case public convenience and necessity will not allow abandonment. In the instant case the absence of Bur-

lington Northern in the making of the record makes impossible any determination that further operation of Red Bluff Branch will result in a burden on interstate commerce.

■ The government argues that the Commission is not required to compute the burden on interstate commerce with mathematical certainty. However true this may be the Commission is required to find some burden upon substantial evidence. Illinois C.R.Co. v. Norfolk & W.R.Co., 385 U.S. 57, 66, 87 S.Ct. 255, 17 L.Ed.2d 162 (1966). The two factors besides the effect of the capital expenditure which are relied upon to show a burden on commerce are that the railroad will probably retain much of its present traffic after the abandonment with little inconvenience to the shippers. This, it is argued, demonstrates that any capital expenditure would be wasteful and a burden on interstate commerce. First, the fact the railroad will retain much of its present traffic after abandonment is not a criteria which demonstrates that the certificate should be issued. "The certificate issues, not primarily to protect the railroad, but to protect interstate commerce from undue burdens or discrimination." *Colorado*, supra. Expenditures are not necessarily a burden on interstate commerce and when they are required as a result of the railroad's own negligence they may be an aid to commerce. Whether or not this is the case here, this court finds that the Commission's conclusion that the expenditures would be unjustified is, absent evidence of the effect of the merger, without substantial basis in the record. Second, with regard to the little inconvenience to the shippers in the area this is a criteria which is to be balanced against an established burden. Since there is no basis in the record upon which a burden can be established, there is no basis upon which the certificate can issue.

■ A further example of the failure of the record to support with substantial evidence the Commission's conclusions appears with regard to their findings that there is no indication there would be an increase of talc shipments over the branch in the future. There is evidence in the record that United Sierra's Yellowstone Mine has increased production approximately 25% over a period of 19 years and further that they intended to increase shipment from Norris to approximately 10,000 to 12,000 tons in 1969. There is no evidence to the contrary which has come to the attention of the court. The Commission's conclusion is without foundation.

Finally, the government argues this case is analogous to a stale evidence case. Atchison, T. & S. F. R. Co. v. United States, 284 U.S. 248, 52 S.Ct. 146, 76 L.Ed. 273 (1931). The government properly points out that only once has this argument been successful and that case has been restricted to its special facts. United States v. Northern Pacific Ry. Co., 288 U.S. 490, 53 S.Ct. 406, 77 L.Ed. 914 (1932). However, this is not the case here. The Commission considered the effect of the merger in arriving at their decision. The question here is, did they adequately consider it and was that consideration based upon facts contained in the record? As pointed out above, the answer to this question is no. The Commission could not have decided the same case presented to it by the evidence. Any consideration of the merger with evidence of its effect on this case was arbitrary and capricious. Any conclusions drawn thereon are without substantial evidence in the record and prejudicial to plaintiffs. We cannot permit a certificate of abandonment to issue to Burlington Northern on the basis of evidence presented by the Northern Pacific Ry. Co., an entirely different railroad.

Therefore, it is ordered that the Commission's order granting a certificate of abandonment is annulled, set aside and permanently enjoined.