**WILLIS SHAW FROZEN EXPRESS, INC., and Ballentine Produce, Inc., Plaintiffs,**

v.

**UNITED STATES of America, and Interstate Commerce Commission, Defendants,**
**and**
**Refrigerated Transport Co., Inc., Intervener-Defendant.**
**No. FS–73–C–69.**

United States District Court,
W. D. Arkansas,
Fort Smith Division.
July 9, 1975.

---

Lester M. Bridgeman and Nancy Pyeatt, Bridgeman & Pyeatt, Washington, D. C., James B. Blair and James F. Dickson, Crouch, Blair, Cypert & Waters, Springdale, Ark., for plaintiffs.

Alan E. Serby, Watkins & Daniell, Atlanta, Ga., Don A. Smith, Harper, Young & Smith, Fort Smith, Ark., for intervening defendant.

Thomas E. Kauper, Asst. Atty. Gen., John H. D. Wigger, Atty., Dept. of Justice, Washington, D. C., Robert E. Johnson, U. S. Atty., Fort Smith, Ark., for the U. S.

Kritz R. Kahn, Gen. Counsel, Kenneth G. Caplan, Atty., I.C.C., Washington, D. C., for the I.C.C.

Before WEBSTER, Circuit Judge, WILLIAMS, Chief District Judge, and MILLER, Senior District Judge.

WEBSTER, Circuit Judge.

This is an action to review, enjoin, annul and set aside an order of the Interstate Commerce Commission granting the intervening defendant a certificate of public convenience and necessity authorizing it to transport frozen foods from certain points in Arkansas to other points in eastern, southern and midwestern states and the District of Columbia, subject to certain conditions. Jurisdiction was invoked pursuant to the Interstate Commerce Act, 49 U.S.C. §§ 17 (9) and 305(g) and (h), the Administrative Procedure Act, 5 U.S.C. § 706, and 28 U.S.C. §§ 1336, 1337, 2284, 2322 and 2325. A three-judge court was convened pursuant to 28 U.S.C. §§ 2284 and 2325. Venue is proper under 28 U.S.C. § 1398(a).

By its application filed August 26, 1969, before the Interstate Commerce Commission ("the Commission"), Refrigerated Transport Co., Inc. ("RTC") sought a common carrier certificate

authorizing it to transport frozen foods from points in Arkansas to points in other states. The application was referred to a hearing examiner. Protests were filed by Ballentine Produce, Inc. ("Ballentine"), and Willis Shaw Frozen Express, Inc. ("Shaw"), plaintiffs in the instant action.

A hearing was held at which twelve shippers testified that they were not then receiving adequate transportation service and that a definite need existed for RTC's service. Ballentine and Shaw opposed the application on the ground that they were providing adequate service for all shippers except those dealing with "exempt" commodities,[1] a group which Ballentine and Shaw thought would be unwilling to pay regulated rates to move their commodities in less-than-truckload amounts. Shaw and Ballentine further complained that their business would suffer if RTC's application were granted.

On May 4, 1971, the hearing examiner concluded that the evidence warranted the granting of RTC's application in its entirety, subject to the condition that RTC file certain annual performance reports with the Commission. Both Shaw and Ballentine filed exceptions to the examiner's report, and the Commission's Review Board found that the evidence supported the examiner's findings except that public convenience and necessity did not require RTC's service from certain points in Arkansas to certain points in southeastern states.

All parties filed petitions for reconsideration of this order and Shaw and Ballentine filed a simultaneous petition to reopen the record for receipt of newly discovered evidence.[2] By its Order of December 6, 1972, the Commission reopened the proceeding and found that present and future public convenience and necessity required the granting of RTC's application on its entirety, as previously recommended by the hearing examiner. Shaw and Ballentine then filed a joint petition for reconsideration of the December 6, 1972 Order. Their petition was denied on June 5, 1973.

This suit was filed by Shaw and Ballentine on July 9, 1973. They allege that the Commission acted arbitrarily and capriciously in granting the application. RTC requested and was granted leave to intervene as a defendant under Rule 24 of the Federal Rules of Civil Procedure.

Specifically, plaintiffs contend that:

1) the Commission irrationally found public need in the evidence of demand for less-than-truckload (LTL) service despite the availability of Shaw and Ballentine to provide such service and despite evidence that most of the shippers supporting the application need exempt traffic and will continue to rely primarily upon private carriage or presently available authorized carriers;

2) the Commission ignored its own rules and received testimony of supporting shippers which had not been timely disclosed;

3) evidence of exempt traffic was improperly admitted;

4) the Commission refused to reopen the hearing to receive evidence that two supporting shippers had abandoned their Arkansas production facilities, resulting in substantial reduction in anticipated traffic; and

5) the Commission relied upon a stale record.

---

1. Certain commodities are exempt from regulated tariffs as long as they are shipped in full truckload amounts, or in less-than-truckload amounts without the presence of a non-qualifying commodity. 49 U.S.C. § 303(b) (6).

2. They contend that after the hearing, two of the shippers who had supported RTC's application decided that they had no need for its services. See IV *infra.*

Whether the action of the ICC was "arbitrary and capricious,"[3] as plaintiffs contend, must be tested by the narrow standard recently announced in *Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 285–86, 95 S.Ct. 438, 442, 42 L.Ed. 2d 447 (1974):

Under the 'arbitrary and capricious' standard the scope of review is a narrow one. A reviewing court must 'consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. . . . Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency.' *Citizens to Preserve Overton Park v. Volpe, supra*, 401 U.S. at 416, 91 S.Ct. at 824. The agency must articulate a 'rational connection between the facts found and the choice made.' *Burlington Truck Lines v. United States*, 371 U.S. 156, 168, 83 S.Ct. 239, 246, 9 L.Ed.2d 207. While we may not supply a reasoned basis for the agency's action that the agency itself has not given, *SEC v. Chenery Corp.*, 332 U.S. 194, 196, 67 S.Ct. 1575, 1577, 91 L.Ed.2d 1995, we will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned. *Colorado Interstate Gas Co. v. FPC*, 324 U.S. 581, 595, 65 S.Ct. 829, 836, 89 L.Ed. 1206.

In the instant case, there seems to be little dispute among the parties that plaintiffs' services when supplied to supporting shippers were generally satisfactory. It also seems undisputed that the applicant "is fit, willing and able properly to perform the service proposed."[4] The main controversy centers upon whether the service proposed "is or will be required by the present or future public convenience and necessity."[5]

## I.

The need for additional service to handle traffic emanating from Arkansas is detailed in an extensive 70-page report of the hearing examiner. The supporting shippers in the main stressed a need for service to handle LTL shipments on a reliable schedule basis and at reasonable minimum load rates. These Arkansas shippers were variously engaged in producing, processing and marketing food products which required refrigeration and delivery under reliable schedules. In a number of cases out-of-state customers of shippers were maintaining minimum warehouse inventories, primarily because of refrigeration requirements and the exotic character of some of the product lines, which in turn required smaller shipments with dependable delivery dates.

For example, Ralston Purina operates several plants in Arkansas, including a catfish processing plant at McGehee, Arkansas, which sells frozen catfish in 500–1500 pound lots. Bcause its customers do not like to maintain inventories, it needs consistent service. Ralston Purina expressed some complaints about the availability of Willis Shaw transportation and said that the rates charged by Shaw and Ballentine are too high.

Another company, Pel-Freez Rabbit Meat, Inc., complained that it had to write off the market in the southeastern United States because Ballentine's rates on less than 100 pound loads and Willis Shaw's rates on less than 3000 pound

---

3. The Administrative Procedure Act in its § 10(e), 5 U.S.C. § 706, provides that:
   . . . The reviewing court shall—
   \*   \*   \*   \*   \*
   (2) hold unlawful and set aside agency action, findings, and conclusions found to be—

    (A) arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with law [or] . . .
    (E) unsupported by substantial evidence
. . . .

4. 49 U.S.C. § 307(a).

5. *Id.*

loads are too high. Swift & Co. maintains a plant at Clarksville, Arkansas, from which it distributes both fresh and cooked poultry. Swift has selected several southeastern states for an increase in marketing—it expects to send out smaller shipments of frozen cooked poultry and cannot use "top loading" because of that method's lack of consistency. Swift expressed the need for a scheduled system which could accommodate its 1000-pound loads.

Three shippers complained that they dealt with military orders and needed specific delivery dates. Another, Joel P. Mills of Marshall, Arkansas, testified that he dealt in specialized foods for restaurants and that he was told Willis Shaw service was not available for his split shipments.

Plaintiffs urge that LTL shipments do not form a basis for authorizing additional service, especially since the authorization is not expressly limited to LTL service,[6] and since the record shows that plaintiffs are capable of providing LTL service and are willing to do so.

■ The record discloses that many shippers otherwise eligible for exempt traffic of their freight are in need of properly refrigerated transport and are willing to ship in less-than-truckload quantities in regulated traffic in return for dependable schedules and provided the carrier maintains a reasonably low minimum weight rate. While the evidence of available service is conflicting, there was substantial evidence in the record that plaintiff Ballentine offered no LTL service and that plaintiff Willis Shaw offered such service indifferently and under irregular scheduling, usually demanding Monday loading, a very inconvenient time for a number of shippers. The applicant RTC, on the other hand, proposed to provide Tuesday and Friday loadings with 3rd and 4th day delivery on LTL traffic throughout the destination area.

We think that a rational basis for the Commission's action is disclosed by substantial evidence upon the record as a whole.

### II.

Plaintiffs complain that the hearing examiner violated the Commission's so-called *Schaeffer* rule by improperly admitting the testimony of four supporting shippers. They seek to have this evidence disallowed.

In *Schaeffer & Schaeffer Extension— New York City*, 106 M.C.C. 100, 102–03 (1967), the Commission elaborated upon the requirement found in its application form for a certificate of public necessity and convenience that supporting certificates be filed on behalf of the shippers who support the application. The Commission noted that such a certificate must be filed on behalf of each supporting shipper when their total number is less than ten, and that when more than ten supporting witnesses are contemplated, additional certifications of support must be presented in such number as to be reasonably representative of the total number of witness contemplated. If the number of supporting shippers should increase subsequent to the filing of the application, the identity and location of each ensuing supporter must be promptly transmitted to the Commission and all parties to the proceeding. The Commission went on to explain the purposes of the rule and the sanction for noncompliance:

> The purpose of shipper certification primarily is to provide the Commission with assurance that the application will be supported and is filed with a bona fide intention of prosecuting it to its final conclusion. Equally as important, this information facilitates a determination as to the manner in which the application should be processed and . . . permits the allocation of sufficient hearing time to

---

**6.** In *Fox-Smythe Transportation Co. Extension-Oklahoma*, 106 M.C.C. 1, 21 (1967), the Commission noted that "a restriction limiting service to the handling of less-than-truckload amounts is indefinite, impractical and difficult to enforce."

accommodate the expected number of shipper witnesses . . . . Additionally, the certification requirement provides a degree of information to protestants or potential protestants so that they can better decide their position in the matter and prepare their presentations, thus resulting in more expeditious disposition of the proceeding.

\* \* \* \* \* \*

Noncompliance with the aforementioned requirements . . . will result in the disallowance of the testimony and evidence proferred by public witnesses upon whose behalf certifications or identifications . . . have not been filed.

Plaintiffs object to the admission of the testimony of three shippers whose certificates of support were not filed until a few days before the hearing even though one of them was dated prior to the date of the application and the other two almost two months before they were presented. They also complain that another shipper was permitted to testify even though no certificate was ever filed in its behalf. When these objections were made to the hearing examiner, he overruled them, noting that the rule is procedural in nature, the violations were technical, and plaintiffs had failed to show that any prejudice resulted from the violation. The Board affirmed this ruling.

■ The examiner was correct in ruling that the *Schaeffer* rule is procedural in nature and designed primarily for the benefit of the Commission. A plain reading of the case can lead the court to no other conclusion. *Cf. Gambrell Extension-Sparta*, 112 M.C.C. 820, 822 (1971) (one of the primary reasons for the *Schaeffer* rule is scheduling). Strict compliance is not required of the Interstate Commerce Commission with respect to its own procedural rules. *American Farm Lines v. Black Ball Freight Service*, 397 U.S. 532, 537–39, 90 S.Ct. 1288, 1292 25 L.Ed.2d 547 (1970). Therein the Court said:

The Commission is entitled to a measure of discretion in administering its own procedural rules in such a manner as it deems necessary to resolve quickly and correctly urgent transportation problems. It is argued that the rules were adopted to confer important procedural benefits upon individuals; in opposition it is said the rules were intended primarily to facilitate the development of relevant information for the Commission's use in deciding applications for temporary authority.

We agree with the Commission that the rules were promulgated for the purpose of providing the 'necessary information' for the Commission 'to reach an informed and equitable decision' on temporary authority applications. \* \* \* The rules were not intended primarily to confer important procedural benefits upon individuals in the face of otherwise unfettered discretion as in *Vitarelli v. Seaton*, 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012; nor is this a case in which an agency required by rule to exercise independent discretion has failed to do so. \* \* \* Thus there is no reason to exempt this case from the general principle that '[i]t is always within the discretion of a court or an administrative agency to relax or modify its procedural rules adopted for the orderly transaction of business before it when in a given case the ends of justice require it. The action of either in such a case is not reviewable except upon a showing of substantial prejudice to the complaining party.'

In this case hearings were continued from February to September. No claim of surprise in February can have any residual vitality in September. Since plaintiffs have neither shown nor alleged that any prejudice resulted from the Commission's failure to enforce the *Schaeffer* rule, their contention must be rejected. *See Twin City Freight, Inc. v. United States*, 360 F.Supp. 709, 712–13 (D.Minn.1972) (3-judge court).

### III.

■ Plaintiffs contend that the Commission erred in permitting shippers of "exempt" [7] commodities to testify in support of RTC's application. However, because those commodities exempted from regulated tariff rates by 49 U.S.C. § 303(b)(6) lose their exempt status when shipped with other goods, such testimony was relevant to the need for regulated carrier service over the routes in question.

These shippers stated that they need less-than-truckload service. In order to make a profit, a carrier selected to perform this service will have to fill up his truck. The additional cargo may not be exempt and the shipper will then have to pay regulated rates to ship his less-than-truckload amount of an otherwise exempt commodity. Thus, it was important for the Commission to consider the posture taken by the shippers of exempt commodities in reaching its decision on RTC's application.

### IV.

■ Finally, plaintiffs charge that the Commission erroneously refused to reopen the hearing to consider evidence that two of the supporting shippers had planned to abandon production facilities in Arkansas—a change that might result in a substantial reduction in anticipated traffic. Additionally, they contend that, in any event, the record relied upon by the Commission, which was four years old, was stale. We will deal with these contentions together.

Because administrative proceedings must come to an end at some point, courts have been properly reluctant to require administrative bodies to reopen proceedings once a final determination has been reached. In *United States v. Pierce Auto Freight Lines, Inc.*, 327 U.S. 515, 66 S.Ct. 687, 90 L.Ed. 821

(1946), the Supreme Court considered an appeal from an order of a three-judge district court remanding a case to the Interstate Commerce Commission for a rehearing "in view of present conditions." The district court, hearing the case in 1944, considered the record, which was developed in proceedings which had been closed in 1940, "stale * * * in view of the influence of [World War II] upon transportation facilities." The Supreme Court reversed, labeling the remand "unwarranted" and saying:

> Except in a single instance [*Atchison, T. & S. F. Ry. v. United States*, 284 U.S. 248, 52 S.Ct. 146, 76 L.Ed. 273 (1932), *limited to its special facts*, *United States v. Nothern Pac. Ry.*, 288 U.S. 490, 53 S.Ct. 406, 77 L.Ed. 914 (1933)], it has been held consistently that rehearings before administrative bodies are addressed to their own discretion. * * * Only a showing of the clearest abuse of discretion could sustain an exception to that rule. The Commission was well acquainted with the impact of the war upon facilities for transport and upon the transportation business in general. In addition to its own expert knowledge concerning such matters, it had before it not only the facts set forth in the petition for rehearing but also those alleged in the extended replies filed by the applicants.
>
> * * * Unless in some specific respect there has been prejudicial departure from requirements of the law or abuse of the Commission's discretion, the reviewing court is without authority to intervene. It cannot substitute its own view concerning what should be done, whether with reference to competitive considerations or others, for the Commission's judgment upon matters committed to its deter-

---

7. See note 1 *supra.*

mination, if that has support in the record and the applicable law.

*Id.* at 534–36, 66 S.Ct. at 697. *See also Carolina Freight Carriers Corp. v. United States,* 323 F.Supp. 1290, 1296–97 (W.D.N.C.1971) (3-judge court) (court considered a record which was "without a doubt * * * stale," but nevertheless ruled that the denial of a petition for rehearing upon the claim that a record is stale does not constitute an abuse of discretion on the part of the Commission.); *Illinois Cent. R. R. v. United States,* 263 F.Supp. 421, 434 (N.D.Ill.1966) (3-judge court), *aff'd,* 385 U.S. 457, 87 S.Ct. 612, 17 L.Ed.2d 509 (1967) (court denied a motion to have the Interstate Commerce Commission reopen proceedings where an "unquestionably stale" record existed, saying "[r]ecords in long and complex cases are inevitably outdated on the day of decision and the Commission has broad discretion to refuse to permit further delay to obtain evidence of changed conditions.").

In the instant case, the Commission knew of the existence of plaintiffs' new evidence when it considered the case upon a second review and nevertheless elected not to reopen the proceedings. Neither plaintiffs' allegation of "newly discovered evidence" nor their charge of a stale record would justify a finding that the Commission abused its discretion in refusing to reopen the proceedings below in the instant case. *United States v. Pierce Auto Freight Lines, Inc., supra.* These contentions are without merit.

In our judgment, the Commission applied the correct legal standards in its consideration of the application and its ruling thereon. The evidence before the Commission amply supports the order granting RTC's application. Accordingly, judgment will be entered affirming the order of the Commission and dismissing the complaint.