**SUBURBAN TRANSIT CORPORATION,**
Plaintiff,

v.

**UNITED STATES of America and Interstate Commerce Commission,**
Defendants,

and

**Somerset Bus Co., Inc., Intervening Defendant.**

Civ. A. No. 794-62.

United States District Court
D. New Jersey.

March 5, 1963.

**718**

———◆———

James F. X. O'Brien, Newark, N. J., for plaintiff.

David M. Satz, Jr., U. S. Atty., Lee Loevinger, Asst. Atty. Gen., John H. D. Wigger, Department of Justice for the United States.

Robert W. Ginnane, Gen. Counsel, Francis A. Silver, Associate Gen. Counsel, for Interstate Commerce Commission.

Joseph S. Lindabury, Elizabeth, N. J., Wilmer A. Hill, Washington, D. C., for Somerset Bus Co., Inc., Intervening defendant. Lindabury, McCormick & Estabrook, Elizabeth, N. J., Ames, Hill & Ames, Washigton, D. C., of counsel.

Before FORMAN, Circuit Judge, and AUGELLI and SHAW, District Judges.

FORMAN, Circuit Judge.

Plaintiff, Suburban Transit Corp. (Suburban), sought authority from the Interstate Commerce Commission (Commission) to extend its operations between points in the vicinity of Metuchen, New Jersey to New York City, more particularly hereinafter described, for the purpose of transporting passengers by motor bus. Public Service Coordinated Transport (PSCT) similarly sought to extend its routes between the same area in New Jersey and New York City. Somerset Bus Company, Inc. (Somerset) sought like authority. The applications ran a checkered course in the Commission. First, Joint Board No. 119 recommended that the petition of Suburban be granted. Then this action was reconsidered before Division One and it agreed that authority should be granted to PSCT. Finally, on April 10, 1962, the entire Commission reviewed the several petitions and granted the authority requested by Somerset.

Suburban and PSCT then petitioned the Commission to reopen the record and accord them a rehearing. These petitions were denied by the Commission on September 5, 1962.

Thereupon Suburban brought this action in which it seeks to annul and suspend the order of the Commission dated April 10, 1962, in which its applications and that of PSCT were denied and the application of Somerset was granted. Suburban also seeks to set aside the order of the Commission of September 5, 1962, denying the application of Suburban and PSCT to reopen the record and for further hearings. It alleged that the orders of the Commission were "arbitrary and capricious in that they denied opportunity for hearings and granted the Somerset application without affording plaintiff a current day in court." [1]

---

1. The report of the Interstate Commerce Commission is rendered under the title Somerset Bus Co., Inc., Extension-South Plainfield, N.J., No. MC–2880 (Sub-No. 14) and also embraces Nos. MC–3467 (Sub-No. 249), Public Service Coordinated Transport Extension-South Plain- field, N.J., MC–115116 (Sub-No. 3), Suburban Transit Corp. Extension-South Plainfield, N.J., and MC–115116 (Sub-No. 4) Suburban Transit Corp. Extension-South Plainfield and Carteret, N.J. It is found in 89 M.C.C. 107.

The main question in this action, however, is raised by the contentions of Suburban as to the illegality of the Commission's order of September 5, 1962 in which it declined to reopen the record and grant further hearings.

A chronology of the significant events leading to this suit is:

*December 29, 1958*—Applications filed by Suburban for route extensions as a common carrier by motor vehicle of passengers and their baggage and of express and newspapers in the same vehicle with passengers between Metuchen and South Plainfield (hereinafter called the Spur Route); between South Plainfield and Carteret (hereinafter called the Oak Tree Route) and for another route between South Plainfield and Carteret (hereinafter called the Inman Avenue Route), all being extensions of Suburban's existing New York operation.[2]

*January 29, 1959*—Application filed by PSCT for like type extensions over the Inman Avenue Route and the Oak Tree Route.

*February 4, 1959*—Application filed by Somerset for the same routes as PSCT with slight extensions.

*September 22–25, 29–30, 1959*—All applications were consolidated for hearing and were heard by Joint Board No. 119.

*May 9, 1960*—Joint Board No. 119 filed its report and found that only the Oak Tree Route and the Spur Route were necessary; that only one carrier was needed to serve those routes and that of the three applicants, Suburban was the best choice and recommended the filing of an order to that effect.

*August 1, 1960*—Exceptions were filed to the report and recommended order by Somerset, PSCT and the Pennsylvania Railroad Company.[3]

*February 10, 1961*—The Temporary Authority Board of the Commission granted Suburban temporary authority to operate over the routes recommended by Joint Board No. 119.

*June 2, 1961*—Division One of the Commission filed a report and order in which it found necessity for the Oak Tree and Inman Avenue Routes, but not for the Spur Route that had been granted Suburban by Joint Board No. 119. It also found that only one carrier was essential and that PSCT was best suited.

*August 18, 1961*—Somerset filed its petition for reconsideration and oral argument.

*August 21, 1961*—Suburban filed similarly.

*January 8, 1962*—The Commission entered an order granting petitions for reconsideration filed by Somerset and Suburban, but limited to the record.

*April 10, 1962*—The Commission filed its report on reconsideration in which it agreed with Division One as to the necessary routes and that only one carrier was essential and found that Somerset was best qualified.[4]

2. All points are in New Jersey unless otherwise mentioned.

3. The Pennsylvania Railroad Company opposed the applications of all three carriers. Since the final order provided that no passengers should be picked up or discharged within the municipal areas of the City of Rahway, which was the concern of the Pennsylvania Railroad Company, and it has not joined in this suit, no further detailed references to it are necessary.

4. After setting forth in full its considerations the Commission came to the following conclusions:

"The question that now presents itself is one of selection. The proposals are essentially identical insofar as frequency of scheduling, and applicants all appear to be financially capable of providing necessary equipment and service. Suburban asserts that inasmuch as the joint board is intimately familiar with local problems, its recommendation should be followed. While we give careful attention to the conclusions and recommendations of a board in a local situation such as is involved here, it is clear beyond doubt, that in providing for hearing by joint boards in matters involving three States or less, Congress did not intend that the Commission should relinquish or subordinate its decision-making power and responsibility.

*May 18, 1962*—Suburban and PSCT filed petitions for reopening the record and for further hearings.

*September 5, 1962*—The Commission entered an order denying the petitions for reopening the record and rehearings on the basis that its decision of April 10, 1962 was in accordance with the evidence and applicable law and that no sufficient cause appeared for reopening or rehearing.

Suburban then commenced this action against the United States of America and the Interstate Commerce Commis-

"We have given consideration to the joint board's recommendation that Suburban be granted authority over the Oak Tree Route, but we are in agreement with the conclusion of the prior report that such a grant to Suburban is not sustained in the record. Suburban's existing routes cannot properly be said to serve any of the proposed territory along the Inman Avenue and Oak Tree routes. Its Metuchen-to-New York route, which it proposes to coordinate with the primary routes, is circuitous and extends in a direction away from New York until joining the turnpike at Interchange 11. The fact that Suburban has obtained temporary authority to operate over the involved routes is not determinative, nor is priority of filing. The resolutions of the civic and governmental organizations presented by Suburban are entitled to little, if any, weight, inasmuch as they appear to have been formulated either on the understanding that Suburban was the only applicant or, as in one instance, because Suburban was considered to be a taxpayer in the involved township.

\* \* \* \* \*

" \* \* \* We are impressed, however, with certain features of the Somerset proposal which tend to give it operational superiority over those of the other applicants.

"Somerset would serve two route segments which neither Suburban, nor PSCT proposes to serve; namely, New Market Avenue from Piscataway to South Plainfield and Park Avenue from Plainfield to South Plainfield. Substantial public support was adduced for service between these areas and New York, and it would appear that the need for bus service by passengers along these routes would be left unmet by a grant of authority to Suburban or PSCT. The addition of these segments with the traffic to be derived therefrom would also increase the probability of profitable operation.

"The desirability of Somerset's proposal is further enhanced, in our opinion, by its intention to operate the involved routes in connection with its present routes. While the extent of time savings which would be achieved for its existing patrons is not entirely clear, some improve- ment in transit time should result, inasmuch as the proposed routes would be substantially the same in distance but operated over express highways for a much higher percentage of the journey. It was noted in the prior report that Somerset could now attain somewhat faster transit time for interstate passengers by altering its routing practices in certain instances. While this may be true, we are constrained to note here that although common carriers are required by the terms of their certificates to render reasonably adequate service, we are unable to determine on this record that Somerset is not rendering reasonably adequate service or that its operations could be better conducted in some different manner. On this record there is no basis for the conclusion or implication that Somerset should change its routing practices, and we do not think this consideration should vitiate the weight to be given the probable improved transit time which would result from the use of the proposed routes.

"We conclude that the public interest will best be served by a grant of authority to Somerset. As stated previously, Suburban's existing operations will not be affected by such a grant. Pennsylvania traffic will be protected by a closed-door restriction at Rahway, the only point in which it has a substantial interest. This restriction will also have the effect of preserving PSCT traffic at that point. Other PSCT routes should be affected only slightly.

"The application of Somerset will be granted, subject to a closed-door restriction at Rahway, and those of other applicants will be denied." 89 M.C.C. 107, 115–117.

Three variations from the majority report were filed. In one, authority would have been granted to Public Service Coordinated Transport as well as Somerset Bus Co., Inc. In the second, the grant of authority by Division One to Public Service Coordinated Transport would have been approved. In the third, authority would have been granted to Suburban Transit Corp., 89 M.C.C. 107, 118–119.

sion. Somerset was subsequently granted permission to intervene. PSCT is not a party to this suit.

Jurisdiction is properly alleged pursuant to 28 U.S.C.A. §§ 1336, 1398, 2284, 2321, 2322 and 2325; 49 U.S.C.A. § 17 (9) and 5 U.S.C.A. § 1009.

Suburban is not now complaining of the Commission's decision on the merits but charges, rather, that the Commission clearly abused its discretion and was arbitrary and capricious in denying to it a rehearing for the purpose of bringing the record up to date. Suburban contends that the Commission's decision of April 10, 1962 was made on a record almost thirty-one months old, that this record was stale at the time of the final decision and that material facts had arisen from the date of the original hearings which substantially affected the choice that the Commission had to make between the three carriers applying for the expanded routes.

Suburban concedes that the reversal of a decision by the Commission denying a rehearing requires a demonstration of clear abuse of discretion. In only one case has the Supreme Court sanctioned such a reversal. Atchison etc. Ry. Co. v. United States, 284 U.S. 248, 52 S.Ct. 146, 76 L.Ed. 273 (1932). In that case the great depression came between the closing of the record in a rate making case, and the final decision. Reviewing the district court's denial of an application for an interlocutory injunction to stay an order of the Commission prescribing maximum rates the Court, in reversing, said:

"* * * The second petition for rehearing, in this proceeding, * * * was of the nature of a supplemental bill. It presented a new situation, a radically different one, which had supervened since the record before the Commission had been closed in September, 1928. It asserted that whatever might be the view of the order when made, and upon that record, a changed economic condition demanded reopening and reconsideration.

\* \* \* \* \* \*

"There can be no question as to the change in conditions upon which the new hearing was asked. Of that change we may take judicial notice. It is the outstanding contemporary fact, dominating thought and action throughout the country.

\* \* \* \* \* \*

"It is plain that a record which was closed in September, 1928—relating to rates on a major description of the traffic of the carriers in a vast territory—cannot be regarded as representative of the conditions existing in 1931. That record pertains to a different economic era and furnishes no adequate criterion of present requirements." 284 U.S. at 260–261, 52 S.Ct. at 149–150.

In United States v. Pierce Auto Freight Lines, 327 U.S. 515, 534–535, 66 S.Ct. 687, 697, 90 L.Ed. 821 (1946), the Court's view of the Atchison case was summarized thus:

"That case, as has been indicated more than once, was 'promptly restricted * * * to its special facts, United States v. Northern Pacific Ry. Co., 288 U.S. 490, 53 S.Ct. 406, 77 L.Ed. 914, and it stands virtually alone.' Interstate Commerce Commission v. Jersey City, 322 U.S. 503, 515, 64 S.Ct. 1129, 88 L.Ed. 1420; see also Baltimore & Ohio R. Co. v. United States, 298 U.S. 349, 389 [56 S.Ct. 797, 80 L.Ed. 1209]. Except in the single instance, it has been held consistently that rehearings before administrative bodies are addressed to their own discretion."

In Interstate Commerce Commission v. Jersey City, 322 U.S. 503, 64 S.Ct. 1129, 88 L.Ed. 1420 (1944) a decision of the Commission involving fares on the Hudson and Manhattan Railroad Company's line between Jersey City and

New York City, was in issue. The Price Administrator, representing the Director of Economic Stabilization, petitioned the Commission for the modification of the reopening order which would permit the record to be brought up to date. As to this the Court commented:

"This raises an important but not a new question of administrative law. The Price Administrator's contention is that this record is 'stale' and that a fresh record is important. One of the grounds of resistance to administrative orders throughout federal experience with the administrative process has been the claims of private litigants to be entitled to rehearings to bring the record up to date and meanwhile to stall the enforcement of the administrative order. Administrative consideration of evidence—particularly where the evidence is taken by an examiner, his report submitted to the parties, and a hearing held on their exceptions to it—always creates a gap between the time the record is closed and the time the administrative decision is promulgated. This is especially true if the issues are difficult, the evidence intricate, and the consideration of the case deliberate and careful. If upon the coming down of the order litigants might demand rehearings as a matter of law because some new circumstance has arisen, some new trend has been observed, or some new fact discovered, there would be little hope that the administrative process could ever be consummated in an order that would not be subject to reopening. It has been almost a rule of necessity that rehearings were not matters of right, but were pleas to discretion. And likewise it has been considered that the discretion to be invoked was that of the body making the order, and not that of a reviewing body."

\*     \*     \*     \*     \*     \*

"The rule that petitions for rehearings before administrative bodies are addressed to their own discretion is uniformly accepted and seems to be almost universally applied in other federal courts. United States ex rel. Maine Potato Growers [& Shippers] Ass'n v. Interstate Commerce Commission, [66 App.D.C. 398] 88 F.2d 780, 784, cert. denied, 300 U.S. 684 [57 S.Ct. 754, 81 L.Ed. 886].; Mississippi Valley Barge Line Co. v. United States, [D.C.] 4 F.Supp. 745, 748; Union Stock Yards Co. [of Omaha] v. United States, [D.C.] 9 F.Supp. 864, 873; American Commission Co. v. United States, [D.C.] 11 F.Supp. 965, 972; R. C. A. Communications, Inc. v. United States, [D.C.] 43 F. Supp. 851, 852." 322 U.S. at 514–518, 64 S.Ct. at 1134–1136.

As against this background of the law the Commission had before it Suburban's petition to reopen the record and for further hearing, the following excerpts from which present its chief allegations:

"For one thing, commuters who formerly used the Lehigh Valley Railroad between their homes and New York City were deprived of that service when the railroad abandoned its service to and from its South Plainfield, Oak Tree and Potters Crossing stations. To supply a needed service, Suburban applied for and received temporary authority to operate between South Plainfield and Metuchen. Petitioner is aware that service to the public under temporary authority raises no presumption that permanent authority is needed or will be granted. On the other hand, those commuters who had to find ways other than the Lehigh Valley to get to and from work should have an opportunity to testify as to their transportation needs and the desirability or lack thereof of the services offered by the different applicants. Suburban

Transit should also have opportunity to prove the very large sums (well in excess of $100,000.00), which it invested to provide service for them from South Plainfield, and also to show the large initial losses necessarily incurred in pioneering a service during initial stages while the public acquaints itself of it. As petitioner's temporary authority to perform its present South Plainfield—Metuchen service is kept in force by reason of the pending applications, its rights to give service to the commuters will terminate when the denial order in its application becomes effective.

"Suburban's application and its operation under temporary authority cover a route between South Plainfield and Metuchen which is not part of the route applied for by Somerset and Public Service. Suburban should be permitted to continue this service, which is needed, but which the majority decision would take from the public, despite the fact that it has enjoyed such service since February 10, 1961.
* *

The public which Surburban now serves between South Plainfield and New York City, should be afforded opportunity to be heard, especially because the majority decision will deprive them of the only existent service over all the routes in question. Further hearing will permit

incorporation of these and other new factors into the records of the cases, and will enable full consideration of current conditions. Justice to all parties, the public and the Commission itself, dictates the need for such opportunity.

"In its report, the Commission found that the record forms no basis for deciding that Plainfield Transit is the primary local carrier in the involved area or that Plainfield Transit is in fact affiliated with petitioner. At a further hearing, evidence to prove these facts would be presented.

"In the more than two and one-half years since the close of the hearings in these applications, substantial changes have occurred in the area which the applicant seeks to serve. The needs of commuters and others for bus service to and from the New York City area have changed substantially. One major change is the abandonment of Lehigh Valley railroad service. Some population shifts have occurred, and there have been changes in the operations of the applicants among which has been the adjustment of petitioner's operations to meet the transportation needs of former Lehigh Valley patrons." [5]

As to the increase in population, Somerset replied in answer to Suburban's petition, that Edison and Woodbridge Townships, where the most dramatic

---

5. Public Service Coordinated Transport's petition for the same objectives, added the following:
"At the time of the hearings, the population of the Townships of Edison and Woodbridge and the Borough of South Plainfield was shown by Exhibit 48 (Tr. 527). That exhibit showed that in 1957 the population of Edison Township was 28,284, Woodbridge Township 56,097 and South Plainfield 13,392. The same source from which those figures were obtained shows that preliminary estimates of the 1961 populations were: Edison Township 47,400, Woodbridge Township 82,100 and South Plainfield 18,500. Those figures demonstrate that a rehearing of the instant application is required in order to more fully develop the record so that present conditions can be considered for a grant of authority at the present time.
"A greater demand for presently available bus service must result from such a growth in population and a grant of authority to Somerset, in the instant application, on the present record will divert business presently enjoyed and developed by Public Service on its present intrastate and interstate lines particularly in the Iselin, Colonia and Avenel sections of Woodbridge and the Borough of Carteret."

growth is demonstrated, comprise large areas which are not tributary to the routes involved, and that it is common knowledge that large developments have sprung up in these two townships which are not in any way contiguous to the routes in question. Furthermore, it contended that there was no allegation that Somerset, itself, is incapable of handling this increase and that if such a charge is to be made, it should have been alleged in the then pending application of PSCT MC–3647 (Sub–No. 328) to be a second carrier over one of the routes herein involved.

Insofar as the Lehigh Valley Railroad's abandonment of its Oak Tree, Potters Crossing, and South Plainfield commuter service to New York City, Somerset makes several points. First, the Lehigh Valley only had one daily commuter train from South Plainfield, and ran none at all from Oak Tree or Potters Crossing. Second, the temporary authority granted to Suburban never served Oak Tree or Potters Crossing. Third, only the routes granted in the permanent authority will serve those two localities.

Suburban's desire to demonstrate the need for continuance of the Spur Route, granted in the temporary authority, is characterized by Somerset as absurd and illogical. It points out that the Spur Route is a tortuously twisting route which, in fact, leads away from New York City, rather than toward it.

Somerset also questions the substantiality of Suburban's alleged investment undertaken under its temporary authority. It notes that Suburban's passengers on the Spur Route are really serving to cut down Suburban's costs in taking its vehicles from the termination point of its existing New York to Metuchen route, to its garages in Plainfield.

Suburban's final point, that it is related to, or affiliated with Plainfield Transit, allegedly the primary local carrier, is met by Somerset with two arguments. First, it submits that if this is true, proof thereof was available at the hearings and is merely an omission which does not constitute grounds to reopen the record. Second, the Commission could take notice of its consolidated proceedings in MC–F–7568, Sidney Kuchin and Lee Jacobs—Control—Tiger Bus Lines, Inc., and MC–F–7602, Morris Lipshitz, Sidney Kuchin, and Lee Jacobs —Investigation of Control—Suburban Transit Corp. and Tiger Bus Lines, Inc., wherein Suburban attempted to make it appear that no such affiliation with Plainfield Transit existed.

Suburban insists that it now has the right to offer proof, among other things, that since the grant of temporary authority it has established the necessity and convenience of the Spur Route and that it has made substantial expenditures to carry on the service between South Plainfield and New York City. While it concedes that operations under temporary authority create no presumption that permanent authority will be granted [6] it argues that the Commission has accepted such evidence and has made grants based upon it. It urges that in this case where a difficult choice is required to be made, testimony concerning its investment and operations under the temporary authority is especially important and could well be the determining factor influencing the Commission to grant its application as against the other petitioners. In effect, Suburban maintains that it was obligatory upon

6. 49 U.S.C.A. § 310a provides:

"(a) To enable the provision of service for which there is an immediate and urgent need to a point or points or within a territory having no carrier service capable of meeting such need, the Commission may, in its discretion and without hearings or other proceedings, grant temporary authority for such service by a common carrier or a contract carrier by motor vehicle, as the case may be. Such temporary authority, unless suspended or revoked for good cause, shall be valid for such time as the Commission shall specify, but for not more than an aggregate of one hundred and eighty days, and shall create no presumption that corresponding permanent authority will be granted thereafter."

the Commission to reopen the record and provide for the further hearing of these matters. It cites a number of decisions of the Commission which it claims support its contention.[7]

Evidence of its investment, details of its operations between South Plainfield and New York City and acceptance by the public only came into existence after the close of the record, so, Suburban submits that it could only effectively demonstrate it on a reopening. Suburban urges that the denial of the opportunity to offer its proposed proofs was detrimental to it as well as to the riding and general public. Some of the decisions of the Commission, cited by Suburban,[8] do show that evidence of operations by a carrier under temporary authority, offered during the course of hearings, has been admitted for various reasons, among which have been the purposes of determining the issue of public convenience and necessity and to establish the fitness or ability of the applicant. But we are not confronted with the refusal of the Commission to admit such testimony *during the course of its hearing*. The issue presented by Suburban is a narrow one, namely, did the Commission arbitrarily and capriciously refuse to grant Suburban's petition to reopen the record before it for the purpose of hearing the evidence it then sought to offer.

We are not persuaded that Suburban has shown that the Commission's denial of its petition to reopen and to hear its proffered evidence can be so characterized. It was clearly within the competence of the Commission to weigh the allegations of Suburban as to changes in conditions and circumstances since the hearing closed and during the period of its operation under the temporary authority, against the matters alleged in the answer filed by Somerset. It must be presumed that the Commission gave these factors such consideration[9] and concluded that Suburban's charges did not require a reopening of the record and further hearing. An examination of the petition of Suburban and Somerset's answer thereto fails to disclose any reason which compels a finding that the Commission ruled arbitrarily and capriciously.

Granted that the Commission acted upon evidence that was two and a half years old and that its decision was the "third in a row of different decisions on the same record," such considerations, in themselves, would give rise to no right to a reopening of the record and to rehearing.

As Suburban realized, it acted at its peril in undertaking the obligations of performing under the temporary authority granted to it at its own instance. Indeed, Somerset has put into question the assertion that Suburban made any consequential outlay in this respect, for which it was not more than compensated by income which it obtained only by force of the temporary authority. The alleged necessity and convenience of the Spur Route is likewise questioned.

It is apparent from the report of the Commission that it was fully aware of the abandonment by the Lehigh Valley Railroad of its South Plainfield, Oak Tree and Potters Crossing stations as well as of increases in the population in the

7. Among them were Newtex Steamship Corporation-Extension, No. W–896 (Sub. 9), 285 I.C.C. 260 and Rivers Truck Lines, Extension, No. MC–55876 (Sub. No. 2) 46 M.C.C. 835, 6 Fed.Carr.Cas. 132.

8. Ibid., n. 7.

9. In this connection in United States v. Pierce Auto Freight Lines, 327 U.S. 515, 535, 66 S.Ct. 687, 697, 90 L.Ed. 821 (1946), the Court said:
"* * * Only a showing of the clearest abuse of discretion could sustain an exception to that rule. The Commission was well acquainted with the impact of the war upon facilities for transport and upon the transportation business in general. In addition to its own expert knowledge concerning such matters, it had before it not only the facts set forth in the petition for rehearing but also those facts alleged in the extended replies filed by the applicants."

area and that it weighed the impact of those facts. Neither the relationship of Plainfield Transit to Suburban, whatever that may be, nor the character of the operation of the routes during the temporary authority are considerations which can be said to be conditions and circumstances of such extraordinary proportions as to bind the Commission to grant the reopening of the record and the further hearing sought by Suburban. Viewing them individually or as a whole the changed conditions and circumstances asserted by Suburban fail to rise to the level of importance that would deprive the Commission of the exercise of its discretion in its conclusion to deny Suburban's petition to reopen the record.

Furthermore, it is to be recalled that Suburban had its order for temporary authority from the Temporary Authorities Board of the Commission on February 10, 1961. Division One of the Commission filed its report and order granting authority to PSCT on June 2, 1961. Suburban acted to review the report of Division One on August 8, 1961. At that time it had been operating under its temporary authority for nearly six months. The Lehigh Valley abandonment had been authorized in the previous January. Suburban had ample opportunity to gain experience as to its costs of operation under the temporary authority. The alleged population changes were known and it was certainly aware of its relationship to Plainfield Transit. Notwithstanding, it did not then petition for a *reopening* of the record but rather for *reconsideration* and oral argument.

In a somewhat analogous situation in United States v. Northern Pacific Ry., 288 U.S. 490, 494, 53 S.Ct. 406, 407, 77 L.Ed. 914 (1933) the Court said:

"* * * [W]e think the carriers' lack of diligence in bringing this matter to the Commission's attention deprived them of any equity to complain of the refusal of their petition. They sat silent and took the chance of a favorable decision on the record as made. They should not be permitted to reopen the case for the introduction of evidence long available and susceptible of production months before the Commission acted. The denial of a rehearing, in view of this delay, was not such an abuse of discretion as would warrant setting aside the order."

Similarly, in the light of Suburban's petition of August 8, 1961 for nothing more than reconsideration and oral argument, it cannot complain now of the exercise of discretion by the Commission leading to a denial of Suburban's petition of May 18, 1962 to reopen the record.

Therefore judgment will be entered in favor of the defendants, United States of America and Interstate Commerce Commission and the intervening defendant, Somerset Bus Co., Inc., and the complaint of the Suburban Transit Corp. will be dismissed. An order in conformity herewith should be submitted.