**TRAVEL AND TOUR SERVICE, INC.
and Wisconsin Coach Lines, Inc.,
Plaintiffs,**

v.

**UNITED STATES** of America and Interstate Commerce Commission,
**Defendants,**

Greyhound Lines, Inc., Intervening
Defendant.

No. 68-C-128.

United States District Court
E. D. Wisconsin.

June 11, 1969.

William C. Dineen, Milwaukee, Wis., Robert E. Joyner, Memphis, Tenn., for plaintiffs.

Robert Lerner, U. S. Atty., Milwaukee, Wis., John H. D. Wigger, Atty., Dept. of Justice, Barry Roberts, Atty., Interstate Commerce Commission, Washington, D. C., for defendants.

Stanley F. Hack, Milwaukee, Wis., intervening defendant.

## OPINION

Before FAIRCHILD, Circuit Judge, & TEHAN, & REYNOLDS, District Judges.

TEHAN, Chief Judge.

On May 14, 1965, Greyhound Lines, Inc. filed a complaint before the Interstate Commerce Commission alleging that Travel & Tour Service, Inc., a broker licensed by the Commission, was arranging for and Badger Coaches, Inc. and Wisconsin Coach Lines, Inc., motor common carriers holding certificates issued by the Commission, were providing transportation of individual passengers on a per capita fare basis between Milwaukee, Wisconsin, and Sportsman's Park Race Track in Chicago, Illinois, as a regular scheduled or non-scheduled service in violation of § 211(a), § 206(a) and § 208(c) of the Interstate Commerce Act[1] and of § 178.6 of the regulations governing special or chartered parties by common carrier.[2] A cease and desist

1. § 211(a) (49 U.S.C. § 311(a)) concerns brokers, and provides in relevant part:
"(a) No person shall for compensation sell or offer for sale transportation subject to this chapter or shall make any contract, agreement, or arrangement to provide, procure, furnish, or arrange for such transportation or shall hold himself or itself out by advertisement, solicitation, or otherwise as one who sells, provides, procures, contracts, or arranges for such transportation, unless such person holds a broker's license issued by the Commission to engage in such transactions: *Provided, however,* That no such person shall engage in transportation subject to this chapter unless he holds a certificate or permit as provided in this chapter. In the execution of any contract, agreement, or arrangement to sell, provide, procure, furnish or arrange for such transportation, it shall be unlawful for such person to employ any carrier by motor vehicle who or which is not the lawful holder of an effective certificate or permit issued as provided in this chapter: * * *"
§ 206(a) (49 U.S.C. § 306(a)) relates to carriers, and provides in relevant part:
"(a)(1) Except as otherwise provided in this section and in section 310a of this title, no common carrier by motor

vehicle subject to the provisions of this chapter shall engage in any interstate or foreign operations on any public highway, or within any reservation under the exclusive jurisdiction of the United States, unless there is in force with respect to such carrier a certificate of public convenience and necessity issued by the Commission authorizing such operations: * * *"
§ 208(c) (49 U.S.C. § 308(c)) also relates to carriers and provides:
"(c) Any common carrier by motor vehicle transporting passengers under a certificate issued under this part pursuant to an application filed on or before January 1, 1967, or under any reissuance of the operating rights contained in such certificate, may transport in interstate or foreign commerce to any place special or chartered parties under such rules and regulations as the Commission shall have prescribed."

2. § 178 has now been renumbered § 1054 (49 C.F.R. § 1054) and provides in relevant part:
"§ 1054.1 *Applicability of this part.*
(a) The regulations in this part shall apply to all common carriers of passengers authorized by section 208(c) of the Interstate Commerce Act, to transport special or chartered parties as an inci-

order covering violations of the Act complained of was sought. Travel & Tour and Wisconsin Coach Lines, plaintiffs here, filed answers denying any violation of the Act. In its answer, Travel & Tour admitted arranging, as a broker, for transportation of passengers between Milwaukee and Sportsman's Park on a daily basis during the racing season there and chartering buses from Badger and Wisconsin Coach Lines, and in its answer, Wisconsin Coach Lines admitted employment by Travel & Tour alleging that such employment was on a charter basis and therefore authorized under § 208(c).

A hearing was held before a hearing examiner on October 10, 1966, and on April 18, 1967 the hearing examiner's report and recommended order were served. The examiner found that Travel & Tour violated § 211(a) of the Interstate Commerce Act in arranging for the transportation of passengers between Milwaukee and Sportsman's Park and that Badger and Wisconsin Coach Lines transported passengers between those points without appropriate operating authority in violation of § 206(a) or § 208(c) of the Act. The recommended order required Travel & Tour, Badger and Wisconsin Coach Lines "to cease and desist * * * from all operations * * * of the character found in this report to be unlawful * * *."

All defendants before the Commission filed exceptions to the hearing examiner's report and recommended order, but on August 8, 1967 the Commission, Division 1, served a decision and order, corrected by decision and order served on August 9, 1967, affirming and adopting the statement of facts, conclusions and findings of the examiner and entering the recommended cease and desist order, effective September 22, 1967. Travel & Tour and Wisconsin Coach Lines thereafter filed petitions for reconsideration, rehearing and modification of effective date which petitions were denied, and Travel & Tour then filed an additional petition for rehearing and/or new hearing, which was denied by order served on April 5, 1968.

This action by Travel & Tour and Wisconsin Coach Lines was commenced

dent to the right to engage in the transportation of passengers by motor vehicle in interstate or foreign commerce over a regular route or routes and between fixed termini, whether such regular-route operation is authorized by a certificate of public convenience and necessity issued by the Commission, under the first proviso of section 206(a) or under section 207(a) of the Interstate Commerce Act. * * *"

§ 1054.2 *Definitions.*
(a) The term 'special or chartered party,' as used in the regulations in this part, means a group of persons who, pursuant to a common purpose and under a single contract, and at a fixed charge for the vehicle in accordance with the carrier's tariff, lawfully on file with the Commission, have acquired the exclusive use of a passenger-carrying motor vehicle to travel together as a group to a specified destination or for a particular itinerary, either agreed upon in advance or modified by the chartered group after having left the place of origin.

§ 1054.6 *Limitations of service.*
(a) No common carrier of passengers by motor vehicle subject to the rules in this part shall transport special or chartered parties, as defined in this part, between the same points or over the same route so frequently as to constitute a regular scheduled or non-scheduled service.
(b) No common carrier of passengers by motor vehicle subject to the rules in this part shall transport passengers to whom individual tickets have been sold or with whom separate and individual transportation arrangements have been made (1) from or to any point or points except those upon its regular route or routes or authorized to be served as off-route points, or (2) over any route or routes other than those so authorized to be served by such carrier. The transportation of any passengers under any such arrangements by any such carrier to or from any point or points not on the regular route or routes of such carrier or to or from any point not authorized to be served as an off-route point, or over any route or routes other than those authorized to be served by such carrier, except as a member of a special or chartered party as herein defined, is not authorized and is hereby forbidden. * * *"

against the United States of America and Interstate Commerce Commission on May 9, 1968. Greyhound was permitted to intervene as a party defendant. Plaintiffs asked for the convening of a three-judge court and asked that the Commission's cease and desist order, finally effective as of May 16, 1968, be set aside and enforcement thereof enjoined. A three-judge court was convened and a hearing was held on February 28, 1969. The court has considered the record herein, including the record of proceedings before the Commission, the arguments of counsel presented both orally and in their briefs and the authorities relied upon by the parties and is prepared to render its decision.

Both plaintiffs here contend that they have been deprived of their property without due process of law because the hearing before the Commission was conducted before a hearing examiner rather than before a joint board, as allegedly required under § 305(a), Title 49 U.S. C.,[3] arguing that the failure to refer the proceeding to a joint board rendered the Commission's orders null and void. The Commission did not rule on the merits of this contention but held, in its order served April 5, 1968, that Travel & Tour's objection to "the alleged procedural irregularity of the Commission in assigning the entitled matter for hearing before an examiner instead of an appropriate joint board * * *" was not timely, citing United States v. L. A. Tucker Truck Lines, Inc., 344 U.S. 33, 73 S.Ct. 67, 97 L.Ed. 54 (1952). We agree.

█ Neither plaintiff here objected before the Commission to the Commission's order dated August 25, 1966 referring the proceeding to a hearing examiner for hearing. Both participated in the hearing of October 10, 1966 without objection. Both filed exceptions to the examiner's report and recommended order without questioning the propriety of the hearing and, after the Commission acted unfavorably on the exceptions, both filed petitions for reconsideration and rehearing without suggesting that a hearing before a joint board was required. It was not until January 5, 1968, fifteen months after the hearing and five months after Commission action on the examiner's report, that a challenge to the procedure followed was made. Clearly, the plaintiffs waived any right to a hearing by a joint board.

█ Plaintiffs appear to argue that the requirement in § 305(a) of reference of certain matters to a joint board is jurisdictional and cannot be waived by their failure to make timely objection. No case is cited which so holds and in our opinion the requirement is merely procedural. De Camp Bus Lines v. United States, 185 F.Supp. 336 (N.J. 1960).

Plaintiffs also argue that since Travel & Tour raised its objection to hearing by an examiner before the Commission, the objection, unlike that in United States v. L. A. Tucker Truck Lines, Inc., which was made for the first time in the District Court, was timely. However, since the objection was made after a hearing before an examiner and ruling by the Commission, when all facts forming the basis for the objection were within plaintiffs' knowledge when the matter was referred to the hearing examiner on August 25, 1966, the objection was not timely so as to distinguish this case from *Tucker*. Monumental Motor Tours v. United States, 110 F.Supp. 929 (Md. 1953); Pomprowitz v. United States, 119 F.Supp. 824 (E.D.Wis.1954), affirmed 348 U.S. 803, 75 S.Ct. 42, 99 L.Ed. 634, rehearing denied, 348 U.S. 889, 75 S.Ct. 203, 99 L.Ed. 699.

Wisconsin Coach Lines has no specific authority under its certificate of public convenience and necessity to engage in operations between Milwaukee and Sportsman's Park. Those operations are

---

3. This contention was raised before the Commission by Travel & Tour only in its petition filed January 5, 1968 for rehearing and/or new hearing.

therefore prohibited by § 206(a) of the Interstate Commerce Act and Travel & Tour is prohibited by § 211(a) of the Act from arranging transportation on Wisconsin Coach Lines from Milwaukee to Sportsman's Park, unless the transportation is authorized under § 208(c) which permits Wisconsin Coach Lines to transport "to any place special or chartered parties." The question before the Commission was whether the transportation arranged by Travel & Tour and engaged in by Wisconsin Coach Lines and Badger involved chartered parties, and was therefore lawful. The plaintiffs here challenge the Commission's ruling on that question as error and an abuse of administrative discretion claiming that the Commission's findings are arbitrary, capricious, insufficient, unreasonable, not supported by substantial evidence, unlawful and beyond the scope of authority of the Commission and that the Commission incorrectly applied the law. These objections stated in the pleadings have been summarized in the following issue stated in the plaintiffs' brief:

"That there was no substantial evidence upon which the Interstate Commerce Commission could make the Findings of Fact which are said to have been made in support of the subject orders."

After reviewing the record before the Commission and the arguments of and authorities cited by counsel, we are satisfied that the crucial findings are based on substantial evidence and that no error of law occurred.

■ As stated previously, "chartered party" has been defined in the regulations as a group of persons acting "pursuant to a common purpose." The par-

ties agree that a true chartered party must have a community of interest, that is, a common purpose other than a desire for transportation. Greyhound Corp. v. Edwards, 100 M.C.C. 453 (1966). In our opinion the record before the Commission establishes that no community of interest existed among the passengers on the trips arranged by Travel & Tour and conducted by Wisconsin Coach Lines from Milwaukee to Sportsman's Park. Travel & Tour advertised those trips as available to individuals,[4] with no group activity mentioned and no significant nontransportation feature offered. Individual tickets were in fact sold. While Greyhound unquestionably might have strengthened its case with evidence of what actually occurred on one or more of the trips involved we believe that the evidence presented was sufficient to establish a prima facie case and to shift to the defendants before the Commission the burden of rebutting that case, a burden they did not attempt to meet. In fact, they presented no evidence in their own behalf.

Even if Greyhound failed to establish by substantial evidence a lack of community of interest, the record does establish, as found by the Commission, that any contract between Travel & Tour and Wisconsin Coach Lines is made before any charter group is formed[5] so that Travel & Tour, in arranging transportation, does not act as agent of a group, and one requirement of a bona fide charter group is missing. See Greyhound Corp. v. Edwards, *supra*.

■ Assuming that bona fide charter parties were formed through Travel & Tour for transportation by Wisconsin Coach Lines to Sportsman's Park, we believe that Greyhound produced sub-

---

4. Wisconsin Coach Lines would have us consider the newspaper advertisements and flyers as proof relevant to Travel & Tour only. However, it admitted employment by Travel & Tour in its answer before the Commission and advertisements revealing the nature of Travel & Tour's operations clearly relate to it.

5. In this respect, a Greyhound witness testified to his observations that while tickets are being sold by Travel & Tour, buses of Badger (on Monday, Tuesday and Wednesday), and Wisconsin Coach Lines (on Thursday, Friday and Saturday) are waiting to pick up the passengers.

stantial evidence, unrebutted by the plaintiffs, that such charter operations were violative of § 1054.6(a) of the regulations because they occurred with a frequency constituting them regular scheduled or non-scheduled services.

Greyhound's original complaint before the Commission involved operations of Travel & Tour, Wisconsin Coach Lines and Badger from Milwaukee to Sportsman's Park. An amended complaint before the Commission challenged the legality of operations from Kenosha and Racine to the Chicago area race tracks. At the hearing of October 10, 1966, Greyhound was limited by the examiner in its presentation of evidence to the operations alleged in the complaints and proof relative to operations from Milwaukee to all Chicago tracks other than Sportsman's Park was not admitted. Greyhound's motion at the hearing to amend its complaint to cover those operations was denied, as was its petition filed after the hearing to reopen or for leave to file a supplemental complaint covering those operations.

The examiner ruled that Travel & Tour violated § 211(a) and Wisconsin Coach Lines violated § 206(a) or § 208 (c) of the Interstate Commerce Act in their operations between Milwaukee and Sportsman's Park and found that no violation between Kenosha and Racine and the Chicago tracks had been proved. As stated previously, the examiner recommended and the Commission entered an order, challenged here, prohibiting all operations of the character found in the examiner's report to be unlawful.[6]

Plaintiffs argue that the Commission's order is vague and indefinite and therefore void, claiming that the report of the examiner does not describe the operations prohibited and that it is not clear whether the prohibition is limited to operations from Milwaukee to Sportsman's Park or covers any similar operations.

Since the Commission's order is to cease and desist from operations "of the character found in the examiner's report to be unlawful" unless authority therefor be obtained, it would have been much better form had the examiner's report more specifically and succinctly capsulized the elements of the operation found to be unlawful. We think, however, that such elements can be gleaned from the report with sufficient clarity to give adequate directions to plaintiffs.

As we read the report the plaintiffs' operation was found to be unlawful because: The patrons did not appoint Travel & Tour as agent, for the group collectively, for the purpose of arranging the transportation; Travel & Tour arranged with the carrier for transportation before the group was formed; the patrons' only community of interest was transportation for attendance at a racing meet; the transportation was afforded so frequently as to constitute a scheduled service.

■ Although it is true that the hearing was limited to operations conducted between particular points, operations of the same character between other points and without authority would be equally unlawful. Framing the cease and desist order in terms of the unlawful operation wherever conducted, without limiting it to the unlawful operation between particular points, does not render the order vague or invalid.

Because the Commission's crucial findings are based on substantial evidence and we perceive no error of law, the complaint seeking to set aside and enjoin enforcement of the Commission's order is dismissed.

---

6. This form of order, prohibiting a type of operation described in a report, has been approved previously. See, for example, ▮▮▮▮▮▮

Bingler Vacation Tours v. United States, 132 F.Supp. 793 (N.J.1955), affirmed 350 U.S. 921, 76 S.Ct. 211, 100 L.Ed. 806.