**CROUSE CARTAGE COMPANY,**
Plaintiff,

v.

**UNITED STATES of America et al.,**
Defendants.

Civ. No. 67–C–2020–C.

United States District Court,
N. D. Iowa, C. D.

June 5, 1972.

William S. Rosen, James S. Holmes, Rosen, Ravich, Summers & Holmes, St. Paul, Minn., Edward S. White, Carroll, Iowa, for plaintiff.

Charles H. White, Jr., Washington, D. C., for defendant I. C. C.

John H. D. Wigger, U. S. Dept. of Justice, Washington, D. C., for defendant United States.

D. J. Fairgrave, Homer E. Bradshaw, Bradshaw, Fowler, Proctor & Fairgrave, Des Moines, Iowa, for intervening defendant Victor Grothaus, d/b/a Grothaus Express.

Before VAN OOSTERHOUT, Circuit Judge, and McMANUS and HANSON, District Judges.

## MEMORANDUM AND ORDER

HANSON, District Judge.

This is an action for judicial review of proceedings of the Interstate Commerce Commission ("ICC"), brought pursuant to 49 U.S.C., Section 17(9), 5 U.S.C., Ch. 7 and 28 U.S.C., Sections

1336, 2321 and 2325. The matter was designated as a three-judge case pursuant to 28 U.S.C., Section 2284.

Plaintiff Crouse Cartage Company ("Crouse") is an Iowa corporation, and is a motor common carrier authorized to transport general commodities in accordance with Certificates of Public Convenience and Necessity No. MC–123389 and Subs. These give Crouse authority over a number of routes in an area bounded generally by Des Moines, Mason City and Sioux City, Iowa, and Omaha, Nebraska. The route of specific interest here is that between Omaha and Denison, Iowa and on to Carroll, Iowa, in both directions.

On July 19, 1966, Wade W. Mohr and Victor Grothaus, d/b/a Grothaus Express ("Grothaus") applied to the ICC on form BF–200 to transfer Certificate of Public Convenience and Necessity No. MC–9765, from Mohr to Grothaus, pursuant to 49 U.S.C., Section 312(b). This Certificate granted operating rights from Omaha to Denison for general commodities, a route also served by Crouse, but limited return haulage to livestock. Additionally, this Certificate allowed service to all points within 25 miles of Denison, an area Crouse also served. Prior to this time Grothaus had been operating under Certificate No. MC–99744 in a small area generally east of Sioux City, with one route extending from Sioux City to Omaha.

Transfer of operating rights is governed by ICC rules set out in 49 C.F.R. Part 1132. Section 1132.5 (formerly Section 179.5) sets out general bases for disapproval of transfer, one of which, Section 1132.5(b), is relevant here:

    (b) *Cessation of operations.* The mere cessation of operations by the holder of an operating right shall not be deemed to require denial of the proposed transfer of such right. If, however, a cessation of operations has occurred, which fact shall be stated in the application, and operations have not been conducted under the considered rights for a substantial period of time, the proposed transfer will be denied unless the holder shows that such discontinuance was caused by circumstances over which he had no control. The Commission may require, in an appropriate case, proof of the nature and extent of operations conducted under the operating right for a period of 6 months preceding the date of the request for such evidence.

In response to a question on the application for transfer, it was indicated that Mohr was, in fact, conducting operations under the operating rights involved in that transfer, and thus, it could be concluded, did not come within the provisions of Section 1132.5(b).

The matter of transfer was assigned Docket No. MC–FC–69011 by the ICC, and was referred to an employee board called the Transfer Board.[1] The proceedings of this Board were, by ICC Special Rule 225(a), informal, and no transcript was made. Upon consideration of the Mohr-Grothaus application, but concededly without notice, individual or published, the Transfer Board approved the transfer. Thereupon, pursuant to 49 C.F.R., Section 179.4 (now Section 1132.4), a synopsis of the Transfer Board order was caused to be published in Vol. 31, No. 188 of the Federal Register on September 28, 1966.

Pursuant to Special Rule 225(g), 49 C.F.R., Section 1100.225(g) (formerly Section 1.225(e)), petitions for reconsideration of orders of the Transfer Board must be filed within 20 days of publication in the Federal Register. However, Crouse did not see this publication, and accordingly made no filing within the 20 day period.

Some time at the end of March, 1967, Crouse became aware of the transfer action of the ICC. On March 29, 1967, it

---

1. The functions of this Board are now apparently the responsibility of the Motor Carrier Board.

petitioned the ICC to suspend the 20 day rule, to forego the constructive notice doctrine, to reopen the transfer proceeding and to allow Crouse to intervene and show that the Mohr operating authority had been dormant for 20 years, the statement in the application to transfer notwithstanding. In support of its petition Crouse cited the irreparable injury it would suffer from competition in towns too small to support additional service, the lack of public harm in reopening, since the status quo had not yet changed, and the ICC interest in making decisions based upon all the relevant facts. This petition was denied by Commissioner Kenneth H. Tuggle on May 10, 1967.

On June 9, 1967, Crouse petitioned the ICC for reconsideration, citing the need for full disclosure in summary ICC proceedings, the need for the prevention of benefits obtained through misrepresentation, the desirability of avoiding fraud upon the Commission, and the right of the ICC to reopen a matter in order to achieve a proper result, as well as all grounds previously asserted. Again, Division 3 of the Commission, acting as an appellate division, denied Crouse's petition on August 10, 1967.

Crouse thereupon commenced the above-entitled action in this Court on September 18, 1967, seeking an order setting aside the ICC transfer order, and directing the ICC to reopen the transfer proceeding, with Crouse as an intervenor allowed to present evidence. Crouse simultaneously requested the ICC to voluntarily suspend the effectiveness of its transfer order, since the formal Certificate had not yet been issued to Grothaus.[2] The reply of ICC Chairman William H. Tucker indicated that the ICC, recognizing the public interest in administrative finality and the hardship to Grothaus, (since issuance of a Certificate was not prerequisite to operation) would not voluntarily stay its order. This reply, together with a second letter dated October 2, 1967, the joint answer

of the ICC and the United States of America, filed November 24, 1967, and the answer of Grothaus, who had been granted leave to intervene as a defendant, all indicated to Crouse the availability of a separate ICC complaint proceeding in which the issues of dormancy and fraud could be fully litigated, with Crouse having the full right to be heard.

Accordingly, on March 7, 1968, Crouse instituted a formal complaint proceeding before the ICC, with Grothaus and Mohr as defendants. This complaint directly alleged the falsity of the Mohr-Grothaus application in violation of 49 U.S.C., Sections 312(b) and 322, and rules and regulations thereunder, and requested that the transfer be held void. Additionally, Crouse alleged that Grothaus was violating its granted authority by offering direct transport between Sioux City and Carroll, Iowa, in violation of 49 U.S.C., Section 306. This matter was assigned Docket No. MC–C–5930, and on April 1, 1968, it was ordered that Mohr and Grothaus satisfy the complaint, and further ordered that the proceeding be handled under modified procedure (Rules 45–54) with all submissions to be in written form.

Subsequent to the institution of the ICC complaint proceeding, Grothaus moved this Court, on July 8, 1968, for dismissal or stay of these proceedings pending ICC determination of the issues therein. The other defendants joined in the motion on July 9th. Noting the similarity of the ICC and District Court complaints, as well as the fact that determination in the former would render the latter moot, on July 11, 1968 this cause was ordered stayed pending the outcome of the ICC proceeding.

In the ICC proceeding, Crouse filed its statement of facts and argument on May 31, 1968. Grothaus reciprocated on August 7, 1968, Crouse made its reply on October 7, 1968, and the matter was deemed submitted as of that date. On March 17, 1969, the matter was referred to Joint Board No. 185, consisting of

---

2. As of this date this Certificate has still not yet been issued.

representatives of Iowa, Nebraska and South Dakota. In accordance with its usual practice, the ICC had its staff prepare a draft recommended report and order summarizing the facts and ruling on the legal issues. This was forwarded to the Joint Board for its consideration, but none of the evidence contained in the voluminous written submissions of either party was ever sent. No member of the Joint Board raised any question about this, or requested the transmittal of the evidence; rather each, without more, simply voted to approve the draft recommended report. Whether this omission was violative of due process is the crux of the action herein considered.

On July 8, 1969, Joint Board No. 185 issued its Report and Recommended Order. This concluded that Grothaus could "tack" his operating authorities and provide through service from Sioux City to Carroll. Conceding that the Mohr operation had been small, had not assessed ICC tariffs, had not been in compliance with ICC regulations, and might have initially justified Transfer Board denial of transfer, the Joint Board nonetheless found that Mohr had not ceased operations. Since this last was what the transfer application asked, and since there was no provision therein for indicating partial or improper operations, no fraud or misrepresentation was found, and the Joint Board accordingly recommended that the complaint be dismissed.

Crouse duly filed exceptions to the ruling of the Joint Board on October 14, 1969, complaining that the Joint Board had only considered the question of fraud or misrepresentation in the transfer application, whereas Crouse had been assured of full litigation of the dormancy issue *per se*. This conclusion, as well as the dormancy issue itself, were disputed by the Grothaus reply filed October 24, 1969. Crouse at this time raised no issue of procedural irregularities.

On October 6, 1971, Division 3 of the Interstate Commerce Commission issued a Report and Order, 109 M.C.C. 732, upholding the decision of Joint Board No. 185, and affirming its finding that Wade Mohr had recently transported commodities under his Certificate. "In view of the longstanding argument between complainant [Crouse] and defendants [Grothaus and Mohr] over dormancy, and in order to remove the cloud heavily cast over the action in the Transfer Proceeding," the ICC went ahead to discuss the dormancy issue "in the light of the evidence developed." It concluded that direct haulage from Omaha to the off-route point of Manning was proper, notwithstanding the absence of service on the regular Omaha-Denison route. Merely because Mohr did not regularly serve all authorized points, did not carry all kinds of freight, and did not operate regularly, the ICC held, did not mean that his authority was dormant, so long as he was operating to the best of his ability, given all the circumstances of his situation. Consequently, it was concluded, no misrepresentation as to dormancy had been made, and Crouse's complaint was ordered dismissed.

Thereafter, on December 1, 1971, Crouse moved this Court for leave to amend its complaint to bring matters up to date and to allege that failure to transmit to the Joint Board the evidence submitted by the parties constituted a deprivation of due process and rendered the subsequent ICC order arbitrary, capricious and unreasonable. Pursuant to a stipulation of the parties, leave to amend was granted on January 20, 1972.

Grothaus filed his answer on February 7, 1972, denying the failure to transmit evidence, but on April 27, 1972, stipulated that this was in fact the case. Both the Interstate Commerce Commission and the United States of America admitted in their answers of February 8, 1972, that the evidence had not been transmitted. However, while defendant United States of America confessed error, admitting that the Joint Board's making evidentiary findings without having the evidence before it rendered the ICC report and order of October 6, 1971 invalid, the ICC itself has stoutly

defended its order, raising a number of contentions that will be considered *infra*.

■ On February 28, 1972 Crouse moved the Court to strike that portion of the Grothaus answer denying that the evidence in the complaint proceeding was not transmitted to the Joint Board for its consideration. It further moved for summary judgment, not only as to that portion of its complaint attacking defects in the ICC complaint proceeding, with a requested order vacating the ICC ruling in that matter, but for summary judgment on its original pleading as well. In connection therewith, it requested that the Court annul the order of the Transfer Board, annul the ICC orders denying leave to reopen, and further order the reopening of the transfer proceeding with Crouse as an intervenor, and finally enjoin Grothaus from operating pending final ICC determination. These requested affirmative orders go far beyond our limited power to remand upon a finding of some procedural or substantive defect, and must therefore be denied irrespective of whether the ICC rulings are affirmed or remanded. F. P. C. v. Idaho Power Co., 344 U.S. 17, 73 S.Ct. 85, 97 L.Ed. 15 (1952).

■ Since it appears that Grothaus has now acquiesced by stipulation that the evidence in the complaint proceeding was not transmitted to the Joint Board, the motion to strike will accordingly be granted. As to the motion for summary judgment, the Court has received briefs, memoranda and other communications from all parties, from which it is clear that, as required by F.R.C.P. Rule 56, there is now no genuine issue as to any material fact remaining to be adjudicated upon the issue of procedural regularity. As to issues of law, this matter came on for hearing on March 24, 1972 before Judge William C. Hanson, with the understanding that issues of law might be submitted to the three-judge Court upon the transcript and written record, without the necessity of having a *formal* convening of the judges in open court.

Upon the record herein, the Court believes the questions for immediate resolution to be three: (1) whether the failure of Crouse to assert the procedural omission in the complaint proceeding to the ICC constitutes a waiver of the right to assert that omission here; (2) whether the confession of error by defendant United States of America has any effect on the contrary position of the ICC; and (3) whether the stipulated failure to transmit any evidence to the Joint Board constitutes good grounds to grant summary judgment.

I.

■ The Court concludes, first of all, that the failure to raise to the ICC the procedural defect here pursued does not in this case constitute a waiver of the right to assert the issue before the District Court. Such a waiver may occur where a party *expressly* declines to challenge a recommended ICC order, and fully acquiesces therein at the time, United States v. Hancock Truck Lines, Inc., 324 U.S. 774, 65 S.Ct. 1003, 89 L. Ed. 1357 (1945), where a party participates in administrative proceedings for some period of time with knowledge of matters *later* sought to be asserted, yet fails to assert them administratively until he loses, United States v. Northern Pacific Ry. Co., 288 U.S. 490, 53 S.Ct. 406, 77 L.Ed. 914 (1933), where a procedural error is obvious, yet the party fails to assert it until he loses administratively, Travel & Tours, Inc. v. United States, 302 F.Supp. 188 (W.D.Wis.1969), or, finally, where a party offers no excuse for failure to object at the proper time, does not bestir himself to learn the actual facts until months after filing in U.S. District Court, makes no claim that he was misled or hampered in ascertaining the true facts, suffers no real prejudice from the error asserted, and raises the issue only as an afterthought in order to undo administrative proceedings without consideration of the merits

thereof, United States v. Tucker Truck Lines, Inc., 344 U.S. 33, 73 S.Ct. 67, 97 L.Ed. 54 (1952). Such is not the case here, for Crouse never acquiesced in the lack of evidence before the Joint Board, and such a defect cannot be said to be patently obvious. Furthermore, it is uncontroverted that Crouse never even suspected that the evidence it had submitted had not been considered by the Joint Board until "long after the decision had been rendered and long after exceptions had been submitted and the case was pending before [Division 3]." [3] Indeed, Crouse had been led to believe that the Joint Board had, in fact, considered its evidence by its repeated references in its report and order to the written record, and by the express statement "Upon consideration of all evidence of record, the joint board finds . . ." [4] Even after Crouse's suspicions were aroused by a chance conversation, it continued to have only 'information and belief' until the filing of the answers of the USA and ICC on February 8, 1972, a response which "the plaintiff could not have predicted." [5] Crouse's lack of knowledge, the presence of an excuse in the misleading nature of the Joint Board report, and the very real possible prejudice in the error complained of all serve to distinguish this case from the *Tucker Truck Lines* series of cases, and compel this Court to hold that Crouse has never waived the right to assert the procedural defect here complained of.

## II.

■ The Court likewise concludes that the ICC has standing to defend its actions, notwithstanding the confession of error on the part of its parent. Although the Attorney General represents the Government in actions to review ICC decisions, 28 U.S.C., Section 2323 expressly gives the ICC the right to appear with its own counsel, *as a party,* and further provides:

> The Attorney General shall not dispose of or discontinue said action or proceeding over the objection of such party or intervenor, who may prosecute, defend, or continue said action or proceeding unaffected by the action or nonaction of the Attorney General therein.

When the two portions of Section 2323 are read together it appears that the ICC can here persist in defending, notwithstanding a confession of error by the Attorney General or Department of Justice. Cf., also, Northern Lines Merger Cases, 396 U.S. 491, 90 S.Ct. 708, 24 L.Ed.2d 700 (1970); McLean Trucking Co. v. United States, 321 U.S. 67, 64 S.Ct. 370, 88 L.Ed. 544 (1944).

## III.

It is thus left for the Court to consider the impact of the ICC's failure to transmit the evidence submitted to the initial decision maker, Joint Board No. 185.

■■ Joint boards are authorized by Section 205 of the Interstate Commerce Act, 49 U.S.C., Section 305(a). They were statutorily created to enable the states to play a role in the administration of that Act, and all matters of "suspension, change, or revocation" of "certificates, permits, or licenses" are required to be referred to them when, as here, "operations of motor carriers or brokers . . . involve not more than three states." 49 U.S.C. 305(a); H. Rep. No. 970, 81st Cong., 1st Sess. 1605 (July 6, 1949); U.S.Code Cong.Serv. 1949, p. 1604. Although joint boards may be advised and assisted by ICC examiners, the Court cannot believe that this means that the joint boards are to be mere rubber stamps, signing whatever recommended orders are placed before them upon the basis of summaries

---

3. Transcript of Hearing, March 24, 1972 at 37.

4. Report and Order of Joint Board No. 185, July 8, 1969, at 9.

5. Letter from William S. Rosen, counsel for Crouse, to the Court, dated February 21, 1972, before the waiver and knowledge question had been raised.

of evidence and findings slanted, in each case, to support these recommendations. Such a triumph of form over substance would not only render the provisions of Section 305(a) substantially meaningless, but would completely subvert the Congressional purpose underlying the joint board concept: if Congress had intended that the ICC or its staff make the initial decision, it would not have required the referral of certain matters to a joint board in the first place.[6]

▇▇▇▇ In addition, 49 U.S.C., Section 305(a), which provides that "orders recommended by joint boards   .   .   . shall become orders of the Commission and become effective in the same manner   .   .   . as provided in the case of orders recommended by members or examiners under section 17 of this title," especially when taken together with 49 U.S.C., Section 17, 49 C.F.R., Section 1100.14 (Special Rule 14) and the ICC order of March 17, 1969 referring this matter to Joint Board No. 185, clearly indicates that a joint board has a meaningful nondelegable duty to decide the controversy and recommend whatever order would be appropriate.[7] Since this duty to initially decide belongs to the joint board alone, it cannot render a decision without *first* making an *independent* evaluation of the evidence, and *then* findings based thereon, without merely requesting the evidence from the ICC if it had doubts. It is axiomatic in administrative law that "he who decides must hear." "If the one who determines the

facts which underlie the order has not considered evidence or argument, it is manifest that the hearing has not been given." Morgan v. United States, 298 U.S. 468, 56 S.Ct. 906, 80 L.Ed. 1288 (1936). Thus, in the first instance the ICC is under a duty to transmit the evidence submitted whenever it is required to refer a matter to a joint board for initial decision, without attempting to pre-hear and pre-decide. If the evidence is not transmitted, not only are the *Morgan* notions of due process violated, but the statutory dictates of 49 U.S.C., Section 305(a) and the Administrative Procedure Act, 5 U.S.C., Sections 554(c) (1); 556(d); 557, as well, and the reviewing court, without more, has no choice but to find any subsequent orders arbitrary and capricious.

▇▇▇▇ The ICC has argued, however, that irrespective of procedural flaws with respect to the Joint Board, subsequent *de novo* consideration by Division 3 of the ICC on the basis of the whole record renders prior procedural flaws non-prejudicial. This argument is not compelling. First of all, it appears that the decision of Division 3 was not completely independent, but relied to an indeterminable extent upon the report and order of Joint Board No. 185:

> Except to the extent herein modified or supplemented, we find that the statements of fact of the joint board are proper and correct in all material respects; and that the evidence con-

---

6. It further appears that the source of input to Joint Board No. 185 was not a statutorily permissible ICC examiner, but the work of the ICC staff, which certainly cannot be said to have the same expertise and qualifications. Furthermore, it is not to be overlooked that it is the joint board, and not the assistants who must make the ultimate decision based upon its own, and not another's analysis. Braniff Airways Inc. v. C.A.B., 126 U.S.App.D.C. 399, 379 F.2d 453 (1967).

7. This view finds additional support in Land-Air Delivery Inc. v. United States, 327 F.Supp. 808 (D.Kan.1971) and Jones Truck Lines Inc. v. United States, 321

F.Supp. 821 (W.D.Ark.1971) which both hold that failure to refer a 'local' matter such as this to a joint board for initial consideration and determination constitutes a fatal procedural error.

Although Jones Truck Lines indicates that referral may be dispensed with where there are no material facts in dispute and no need to sift and weigh conflicting evidence, such is not the case here. What is most apparent from the administrative record herein is the deep dispute between Crouse and Grothaus as to whether Mohr was 'operating' for purposes of 49 C.F.R., Section 1132.5, and whether the cessation of operations, if any, was due to factors beyond Mohr's control.

sidered in the light of the exceptions and reply thereto does not warrant any different result than that reached by the joint board. [109 M.C.C. at 733.]

Since we cannot tell the degree to which reliance was put upon the tainted Joint Board report, and since we cannot say that Division 3 might not have given even greater regard to the evidence submitted if the Joint Board recommendation was not present, the matter must be remanded for reconsideration in any event.

Even assuming *arguendo*, however, that the final ICC order was independently based, the Court cannot agree that referral to a joint board may be an idle gesture or that the respective statutory functions of the ICC and the joint boards may be complacently ignored. The real issue is what agency or sub-agency is required to be the initial decider. If the ICC can give its orders an "immunity bath" by merely giving independent appellate review, it can always avoid the statutory provisions for joint boards and hearing examiners, in complete derogation of the intent of Congress. This has not been permitted with joint boards previously, Land-Air Delivery, Inc. v. United States, *supra*; Jones Truck Lines Inc. v. United States, *supra*, and will not be permitted here. Regardless of whether or not Division 3 gave de novo review, the Court finds the Report and Order of Joint Board No. 185 dated July 10, 1969 and the subsequent decision of ICC Division 3 dated October 6, 1971 to be violative of both due process and statutory dictates, and therefore arbitrary, capricious, void and of no effect.

## IV.

There remains the question of remedy. The ICC urges that, since the Court can see that the ICC findings are supported by substantial evidence, it would be an idle ceremony to remand in order to obtain the identical administrative result. M. & M. Transp. Co. v. United States, 128 F.Supp. 296 (D.Mass.1955) aff'd. 350 U.S. 857. The Court cannot agree, for we cannot say that once the evidence is properly presented to the joint board they will not arrive at a completely different result which may then be adopted by the ICC. Furthermore, it appears that the Crouse complaint, in accordance with the suggestions of ICC Chairman Tucker and the decision of Division 3, was primarily focused on the dormancy issue, while Joint Board No. 185 primarily looked at the question of misrepresentation in the Grothaus transfer application. Once both issues are simultaneously adjudicated, the result may be dissimilar in any event. Accordingly, the appropriate remedy here must be to remand this cause for further proceedings in the light of this decision.

## V.

One matter remains for clarification. On July 11, 1968, this Court, per Hanson, D. J., ordered Plaintiff's judicial appeal of ICC orders in the transfer proceedings stayed pending the outcome of the complaint proceeding, herein remanded. It now appears that the Court at that time somewhat misconceived the problem presented, viewing it as a problem in mootness rather than as one of exhaustion of remedies. Although at the time of initial filing Crouse had exhausted its administrative remedies for purposes of judicial review, once it commenced the complaint proceeding the exhaustion requirement again became unfulfilled, and remained so until the termination of the complaint proceeding, Thus, the transfer proceeding might be viewed as preliminary, and not at this time susceptible of judicial review except as ancillary to review of the complaint proceeding.

In addition, it now appears that plaintiff will be able to fully prosecute his grievances in the remanded complaint proceeding. It further appears that, once that proceeding is concluded and judicial review afforded, matters pertinent to the transfer proceeding will be completely moot, without any possibility

of meaningful relief, especially in view of M. & M. Transp. Co. v. United States, *supra*, regardless of whether Crouse prevails or not. Accordingly, the previous order of the Court will be modified and the action dismissed outright. However, this in no way deprives Crouse of its remedies, for it may still obtain the sole relief it has assertedly sought all along, adjudication of the dormancy issue by the ICC, upon the remand ordered herein.

### VI.

Pursuant to F.R.Civ.P. Rule 52, it is ordered that the foregoing shall constitute the findings of fact and conclusions of law in this cause.

It is further ordered that, pursuant to F.R.Civ.P. Rules 56 and 58, judgment be hereinafter entered in the above-entitled action.